THE PEOPLE OF THE STATE OF NEW YORK ex rel. LOUISE SILAS, Relator, *v.* GERALD G. PUGH, as Superintendent of the Five Points House of Industry, Respondent.

Supreme Court, New York County, April 17, 1930.

*Gallert, Hilborn & Raphael*, for the relator.

*Cornelius J. Sullivan*, for the respondent.

McCook, J. The child, Ruth Petgrave, was brought before the Children's Court about August 13, 1929, on petition of Rosalind Mason (no relation), who represented her to be without proper guardianship. It appeared that Mrs. Mason, the petitioner in the Children's Court, had been in charge of the child for a number of years, afterwards the mother, who is the present relator, then Mrs. Mason again. A controversy between the two women caused the original Children's Court petition to be brought. Alfred Silas, husband of relator, is not the child's father.

Certain testimony was taken by Judge LEVY, of the Children's Court, on August 15, 1929, and Ruth Petgrave was by him adjudged to be a neglected child. On the same day she was remanded for mental and physical examination, and reports on each head followed. On September 18, 1929, a " remand commitment·" was signed by Judge LEVY, purporting to remand the child until December 20, 1929, to respondent. A similar document was signed by the same judge on December 20, 1929, purporting to remand her until March 31, 1930, to the same institution.

Mrs. Silas petitioned for an earlier writ of habeas corpus, which was issued on February 14, 1930, returnable February eighteenth before Mr. Justice BIJUR, of this court. There was an argument and then followed a number of adjournments, pending which, upon the suggestion of Justice BIJUR, Judge LEVY heard further evidence, at the instance of Mrs. Silas' counsel, in the Children's Court. The (first) writ was thereafter withdrawn. There is no claim that Mrs. Silas failed to receive notice of the proceedings before Judge LEVY. It has, on the contrary, been conceded by stipulation that she appeared and testified in the Children's Court.

The present writ was returnable before the date set in the second " remand commitment." After two sessions, at which no evidence was taken, certain facts were stipulated, some of which have been already recited, and the court announced that there would be no hearing on the merits until after a decision upon the preliminary questions of law involved.

The law upon this general subject has been regarded as long settled by *People ex rel. Tweed* v. *Liscomb* (60 N. Y. 559, decided in 1875). Judge ALLEN, of the Court of Appeals, expressed himself as follows (p. 571): " As well at common law as under the statutes of this State, if a party is detained on process, the existence and validity of the process are the only facts in issue, and the right to inquire into the validity of the process is coextensive with that which is allowed in an action for false imprisonment. If the process is valid on its face, it will be deemed *prima facie* legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction. Error, irregularity, or want of form, is no objection; nor is any defect which may be amended or remedied by the court from which it issues."

In *People ex rel. Danziger* v. *P. E. House of Mercy* (128 N. Y. 180, 185) the earlier case was cited and quoted from with approval, and the court further said: " In habeas corpus the only inquiry is whether the magistrate issuing process had authority to pronounce a judgment of imprisonment for the cause assigned, and if this has been shown the statute forbids the judge to review the decision of such magistrate."

Under the Children's Court Act of the City of New York (Laws of 1924, chap. 254, as amd.) the court was given (section 7) exclusive original jurisdiction " to hear and determine all cases or proceedings involving the hearing, trial, parole, probation, remand or commitment of children actually or apparently under the age of sixteen years * * *." Section 26 of the same act provides for interposition on the part of a parent or guardian by petition to secure vacation or modification of such disposition, showing a previous application for release, made and denied, or made and not acted upon within a reasonable time.

It is clear from these two sections that said Children's Court had the power to make the finding and commitment respectively made in the case of Ruth Petgrave, who was actually, or apparently, under sixteen years of age; further, that it has the power to order her discharged at any later time when her welfare so requires.

The relator relies on the recent case of *People ex rel. Riesner* v. *N. Y. N. & C. Hospital* (230 N. Y. 119), and particularly that part of the opinion wherein Chief Judge CARDOZO says of the commitment before him: " It shows upon its face that it was intended to be provisional and temporary. Dated May 9, 1919, it recites that the children have been ' held by the court for disposition ' on May 16, 1919, and confides them to the custody of the appellant ' until that date,' and no longer."

Deprived of its context, this quotation might appear to express

a modification of the law of the cases above cited; however, from the opinion read as a whole it is evident that the decision of Judge CARDOZO turned on the absence of " notice to either parent, or to any guardian or custodian " (p. 120). At page 121 the court expressly said: " We are unable to concur in the conclusion that there was defect of jurisdiction. The defect asserted is the failure of the commitment to disclose notice to either parent."

On page 122: " Until notice to a parent or custodian, the judgment, with any commitment based upon it, is not final, but provisional. * * * It remains subject until then to the parents' right to appear in any court of competent jurisdiction and demand the custody for themselves. * * * Even after notice, the award is subject to revision upon proof of changed conditions."

And (at p. 123): " The parents, when found, may be heard in the original proceeding. If a hearing, or the opportunity for one, has not been given to them there, they may still be heard in the Supreme Court upon a writ of habeas corpus, and may then contest the necessity for the disturbance of their custody. In the meantime, the warrant of commitment remains a lawful exercise of jurisdiction. Its restraint is not illegal because subject, on a proper showing, to be modified or ended."

Finally, on the same page, the court said: " The commitment, being without notice and provisional, did not touch the father's right to establish, if he could, that there should be an end to its restraint."

In other words, the jurisdiction of the Children's Court of the City of New York in our case cannot be successfully attacked, and the defect of the commitment in the *Riesner* case did not exist in the case now before this court.

True enough, as enacted by subdivision 7 of section 7 of said Children's Court Act: " No provision of this act shall be deemed to limit or abridge in any manner the jurisdiction of the supreme court, surrogate's courts, or any court of record."

The relator in this connection cites *Matter of Knowack* (158 N. Y. 482), which presents the question whether the Supreme Court has power to intervene and restore children to the custody of their parents. It would, of course, be a startling doctrine, as the opinion in that case says, that a child for reasons such as there disclosed cannot be restored to parental care and control, *where conditions have changed*. This brings us to the precise point of distinction. All recognize a difference as to the duty of the Supreme Court with respect to the restraint of a convict and the restraint of a child, who is a ward of the court, its individual welfare the chief concern of the law. Should the conditions be

shown, upon proper application, to have changed, nobody questions the right and duty of the court to interpose in behalf of its ward. Until such change is shown, however, this court will not interfere with the finding and disposition of the Children's Court, made after hearings upon notice to the mother, and assisted by scientific and social adjuncts at that court's disposal in the conclusion reached.

The writ is dismissed.