# In the Matter of IRIS R. LEWIS and Another, Infants.

Surrogate's Court, New York County, May 22, 1962.

*Brennan, London & Buttenweiser (Gertrude Schwartz* of counsel), for Jewish Child Care Association, petitioner. *Leo A. Larkin, Corporation Counsel (Philip Sokol* of counsel), for Department of Welfare of the City of New York, respondent. *Melvin Katz,* as special guardian for Iris R. Lewis and another, infants, respondent. *Ressler & Ressler (Ira R. Ressler* of counsel), for Mollie Lewis, respondent.

JOSEPH A. COX, S. This is a proceeding brought by the Jewish Child Care Association of New York under the provisions of section 384 of the Social Welfare Law to obtain the commitment, custody and guardianship of the persons of two infants, which would give to the said association the right to place the infants for legal adoption subject to the approval of this court. The respondent in this proceeding is the mother of the infants who refuses to consent to the placing of the children for adoption and who now asserts her willingness and desire to take the custody of and to care for the said infants.

The testimony adduced at the hearing before this court reveals the following salient facts: The respondent is married but apparently separated from her husband, who is a member of the armed forces and has served in various assignments overseas virtually without interruption for many years. The said husband denies the paternity of the two children in question and has consented to their being placed for adoption. The respondent, on the other hand, at this time alleges the legitimacy of the children, although from the records and from prior statements made by her it would appear that there may be some doubt as to the truthfulness of the present position taken by the respondent. The first child, Iris R. Lewis, was born in 1957 and after a somewhat longer than usual stay in the pediatric ward of the hospital where she was born, because of the mother's reluctance to take charge of the child, was taken by the mother to the Department of Welfare of the City of New York and placed with them for foster care. The second child, Susan

Silverglad, was born in 1958 and was also placed with the Department of Welfare of the City of New York for foster care.

It is alleged by the petitioner that the respondent " abandoned " the infants within the purview of section 384 of the Social Welfare Law and that as a result of such abandonment the association is now entitled to have the children committed to their custody and guardianship without the consent of the mother and to place the children for adoption. The basic questions to be determined here hinge upon whether or not the respondent did in fact " abandon " these infants within the meaning of that term as used in the statute, and did the claimed abandonment constitute such willful and wanton neglect as to justify the taking of the infants from their natural mother (*Matter of Knapp,* 3 Misc 2d 840; *Matter of Paden,* 181 Misc. 1025).

The record discloses that the mother is an emotionally and perhaps mentally disturbed person who at one time voluntarily committed herself to a mental institution for treatment where she remained for a short time; that her two older children, the admittedly legitimate children of her marriage, are being reared in foster homes; that the said respondent apparently finds herself unable to accept responsibility or to plan for and take care of her children; that she has not made or maintained a home for her children or contributed to their support. The record, however, also discloses that the children and the welfare of the children are often uppermost in her mind; that she recognizes her own failings as a mother and her own inability to take care of the children; that she voluntarily sought to place the children in foster homes so that they would receive better treatment than she could give them; and finally, that although pressed to do so she constantly refused to release them for adoption.

It is alleged that the respondent visited the child Iris on only three occasions from the date the child was surrendered to the time when this proceeding was instituted which was on July 11, 1961; that the last of these visits took place on June 11, 1959 and that the respondent has not visited her child Iris since that time. It is alleged with respect to the child Susan that the respondent visited her only in November of 1958 and in October of 1959, and that she has not seen or inquired about the infant since that time.

The testimony adduced at the hearing and the records in evidence do not fully support these allegations for although the respondent may not have seen or visited her children at other than the times specified, there is evidence that she fre-

quently telephoned the agency to inquire about them and that on several occasions she spoke to the social worker in charge of the matter about the children; that she wrote to the agency about the children; that she requested that they be placed together in one foster home and that when she was told that this had been done insisted upon a picture of the children together as proof of it, and that although pressed to do so as aforesaid, she repeatedly refused to release the children for adoption. There is also evidence to indicate that visitation of the children was denied to her when requested and that a promise to allow her to see the children was held out to her in return for her agreement to release the children for adoption.

These actions can hardly be considered the actions of a person who intends to abandon her children and has no concern for them. In *Matter of Paden* (*supra,* p. 1027) the court said: " To warrant a severance of blood ties, the abandonment must be absolute and unequivocal." (See, also, *Matter of Davis,* 142 Misc. 681; *People ex rel. Pickle* v. *Pickle,* 215 App. Div. 38; *Matter of Anonymous,* 178 Misc. 142.) In *Matter of Bistany* (239 N. Y. 19) the Court of Appeals held that to constitute an " abandonment " the acts of the parents must be so unequivocal and absolute as to bear only one interpretation, and one interpretation only, that is, that they intended to abandon the children forever. (See, also, *Matter of Norris,* 157 Misc. 333.)

This court cannot at this time determine that the respondent mother who has shown and still shows an abiding concern for the welfare of her children will never in the future be fit or able to care for or support them. The emotional and mental disturbances from which she now suffers may be alleviated and cured and this court hesitates to make a ruling which would in effect brand her as incurable and forever unfit to assume the duties and obligations of motherhood.

In *People ex rel. Portnoy* v. *Strasser* (303 N. Y. 539, 542) the Court of Appeals succinctly stated the rule of law which must apply: " No court can, for any but the gravest reasons, transfer a child from its natural parent to any other person * * * since the right of a parent, under natural law, to establish a home and bring up children is a fundamental one and beyond the reach of any court. (*Meyer* v. *Nebraska,* 262 U. S. 390, 399)."

Although this court's concern must always be for the welfare of the children it cannot overlook the natural laws and the ties of a mother to her children and must jealously guard and protect those ties. (*People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465.)

Our courts have defined the term " abandonment " as neglect and refusal to perform the natural and legal obligations of care and support. (*Matter of Paden,* 181 Misc. 1085 *supra; Matter of Davis,* 142 Misc. 681, *supra.*) It would appear to this court, however, that such neglect and refusal must be a willful and not an involuntary neglect or refusal caused by illness, financial difficulties or the inability to assume the responsibilities of parenthood due to temporary emotional and mental disturbances. The burden of proof on the issue of abandonment was on the petitioner herein (*Matter of Anonymous,* 178 Misc. 142, *supra*). It is the opinion of this court that the petitioner has failed to sustain this burden of proof and that the abandonment proved by the petitioner is not such as would give rise to the right to have the children committed to the petitioner's custody and guardianship pursuant to the provisions of section 384 of the Social Welware Law. These applications for commitment are therefore denied.