Millard L. Midonick, J.
This appears to be the case of first impression in which a proceeding on a writ of habeas corpus has been referred by the Supreme Court to the Family Court to determine such proceeding, under section 651 of the Family Court Act, with the same powers possessed by the Supreme Court.
A writ of habeas corpus was issued on the 28th day of August, 1962 by the Supreme Court of the State of New York, Bronx County, on the petition of Esther Mittenthal, the mother and only surviving parent of Frederick Mittenthal, a minor, born January 2, 1946, for the purpose of regaining custody of said child.
On November 8, 1956, in a previous neglect proceeding in the Domestic Relations Court of the City of New York, this mother had been personally heard as respondent, and on the basis of such hearing, a finding of neglect was then made, and the child was paroled to his uncle and the mother remanded to Bellevue Hospital for psychiatric observation. (Matter of Mittenthal, Bronx County Children’s Ct. Div., Docket No. 1834-1956.)
*503 Subsequently, the said mother was hospitalized at Central Islip State Hospital and was for a long time unable to care for and maintain the infant who had been temporarily placed with his uncle.
After parole of the child to his uncle during several months of 1956 and 1957, the child was temporarily remanded to the Pleasantville Cottage School, a residence maintained by the Jewish Child Care Association, from February 8, 1957 to August 9,1957.
On August 9,1957 the child was ‘ ‘ committed ’ ’ by the Domestic Eelations Court, “through” the Commissioner of Welfare of the City of Hew York, “ to Pleasantville Cottage School ”.
The said mother was released from Central Islip State Hospital in March, 1961 and was adjudicated competent by the order of the Supreme Court, State of Hew York, Bronx County on July 19,1961.
Thereafter, on March 15,1962 the said mother filed a petition in the Domestic Eelations Court of the City of Hew York for the release of the said child from the above institution and from the custody of the Commissioner of Welfare of the City of Hew York, seeking to regain custody of the child herself. (Matter of Mittenthal, Bronx County Children’s Ct. Div., Docket No. 646-1962.) In that proceeding for release, a hearing was held on March 23, 1962, with the present petitioner before that court, and the following indorsement was made in the handwriting of Mr. Justice Joseph E. Dyer of the then Domestic Eelations Court of the City of Hew York: “3-3-62. After testimony under oath, the court is convinced that petitioner is not at this time able to give proper care and supervision of boy. Application denied.”
At the next hearing in the same release proceeding, held on May 1, 1962, the indorsement of the court reads: “ Boy paroled for return to custody of Jewish Child Care Association. Mother directed not to take child out of home. Mother paroled to May 23, 1962.”
On May 23, 1962, the indorsement of that court shows: “ Mother of child present with counsel. Child now in foster home care under auspices of Jewish Child Care Association.”
On September 1, 1962, the Domestic Eelations Court by constitutional and statutory reorganization was replaced and succeeded by a new court of record, the Family Court of the State of Hew York, City of Hew York (H. Y. Const., art. VI, §§ 13, 35, 37; L. 1962, chs. 686, 687, 700, 702, 703).
On the 4th day of October, 1962, on the return of a writ of habeas corpus then obtained by the mother as petitioner in the *504 Supreme Court of the State of New York, Bronx County, Mr. Justice Edgar J. Nathan, Jr. made an order in the following terms: ‘ ‘ and it appearing that the Petitioner in this habeas corpus proceeding asserts that new circumstances require a disposition of custody different from that heretofore made in a neglect proceeding by the Children’s Court Division of the Domestic Relations Court of Bronx County, it is,
“ ordered, that this proceeding is referred to the Family Court of Bronx County, pursuant to Section 651 of the Family Court Act, for any disposition that the said Family Court wishes to make respecting the custody of the infant Fred Mittenthal.”
Section 651 of the Family Court Act, effective September 1, 1962, provides: “§ 651. Jurisdiction over habeas corpus proceedings on referral from supreme court. When referred from the supreme court to the family court, the family court has jurisdiction to determine, with the same powers possessed by the supreme court, habeas corpus proceedings for the determination of the custody of minors.”
' On November 21, 1962, a full hearing with testimony was conducted on the issues now relevant in the Family Court, Bronx County, Juvenile Term. Present before this court and participating in this hearing were: petitioner and her attorney, law guardian for the child designated by the court with consent of all parties, attorney for the Commissioner of Welfare of the City of New York, and attorney for Jewish Child Care Association.
The powers of both the Supreme Court and the Family Court in such proceedings involving the custody of children are similar although not identical, and are based upon substantially the same paramount considerations of the welfare of the child.
Mr. Justice Van Voorhis, now an Associate Judge of the Court of Appeals of the State of New York, when writing as a Justice of the Supreme Court, held (People ex rel. Anonymous v. Areson, 195 Misc. 609, 611-612):
“ assuming arguendo that such a power [to release a child from custody of an institution into which the Child had been committed as a delinquent by the Children’s Court] does exist in the Supreme Court, it does not follow that Special Term is obliged to exercise it where full relief can be obtained by appeal or in the Children’s Court. The Supreme Court has jurisdiction in equity, also, over Surrogate’s matters, but ‘ Although this latter jurisdiction exists, the limitations under which it will be exercised are as well settled as the jurisdiction itself, and there is no question that a court of equity will not usually take juris *505 diction of the acts of executors in the management of the estate in cases where the Surrogate’s Court has power to act, unless special circumstances are shown which make it necessary to bring into action the power of the court to supplement the powers in regard to which the Surrogate’s Court is defective, or because, for some reason, full and complete justice cannot be done in that court. (Seymour v. Seymour, 4 Johns. Ch. 409; Blake v. Barnes, 28 Abb. N. C. 401; Hurth v. Bower, 30 Hun, 151, 152.) ’ (Borrowe v. Corbin, 31 App. Div. 172, 177, affd. on opinion of App. Div. 165 N. Y. 634.)
“ A similar ruling should be made here, where the Washington County Children’s Court has complete statutory jurisdiction over this commitment as a delinquent child. Regardless of the naked question of power, Special Term ought not to sit in review of determinations by Children’s Courts in matters where the latter have jurisdiction over all the phases of the problem.
“ Such a conclusion would appear to be in conformity with analogies under recent decisions by the Court of Appeals, in proceedings involving habeas corpus and coram nobis. (Matter of Morhous v. New York Supreme Court, 293 N. Y. 131; Matter of Lyons v. Goldstein, 290 N. Y. 19; People ex rel. Sedlak v. Foster, 299 N. Y. 291.) * * * The petition is dismissed ”.
To the same effect is the holding in People ex rel. Silas v. Pugh (136 Misc. 547 [Supreme Ct., N. Y. County]).
The case of People ex rel. Riesner v. New York Nursery & Child’s Hosp. (230 N. Y. 119 [1920]) is not a holding to the contrary, except in cases where the petitioning parent was not a party to or personally before the Children’s Court in its prior ex parte proceeding and the Supreme Court in its discretion wishes to exercise peremptory jurisdiction at once. (People ex rel. Silas v. Pugh, supra.)
The Family Court Act, effective September 1, 1962, provides for complete statutory jurisdiction over all phases of the problem of placement of a neglected child, over successive extensions of such placement, until the 18th birthday of a male (and, with his consent, until the 21st birthday), and over petitions to terminate placement brought by a parent or any interested person acting on behalf of a child. (Family Ct. Act, §§ 352, 355, 361, 362, 365, 366.)
Section 365 of the Family Court Act offers to the Family Court in proceedings to terminate placement, what may well be substantially as wide a spectrum of equitable relief as found in the powers of the Supreme Court:
“ § 365. Orders on hearing, (a) If the court determines after hearing that continued placement serves the purposes of this *506 article, it shall deny the petition. The court may, on its own motion, reduce the duration of the placement, change the agency or institution in which the child is placed, or direct the agency or institution to make such other arrangements for the child’s care and welfare as the facts of the case may require.
“(b) If the court determines after hearing that continued placement does not serve the purposes of this article, the court shall discharge the child from the custody of the agency or the institution in accord with section three hundred fifty-four.” (Italics added.)
Moreover, as a practical matter of auxiliary service available to the Family Court, since section 354 referred to in the above-quoted section provides that after discharge from placement and custody when the child is restored to the parent, the parent may be placed under probation or under an order of protection, or both, the Family Court has in fact, in the form of its auxiliary services trained to supervise relationships between parent and child, a more flexible and meaningful control over the ultimate aftercare of a child than does the Supreme Court.
This child will not be 18 until January 2,1964. Placement may be extended for a year at a time by the Family Court until the 18th birthday of a male, and, with his consent, thereafter until his 21st birthday. (Family Ct. Act, § 355.) Consequently, the Family Court has ample continuing jurisdiction to deal with the child and to transfer custody to the mother if and when her situation and that of the boy have in fact so changed as to indicate that the “child’s care and welfare” so “require” (Family Ct. Act, § 365), with or without probationary supervision of the mother and child thereafter.
On March 23, 1962, the then Domestic Relations Court found and determined, on the application of this mother for release, that custody should remain where it now is.
In the present proceeding, no issue is raised by the petitioner with respect to the legality or the power of our predecessor Domestic Relations Court to commit this child on August 9, 1957 as a neglected child, or to decline to release him to the mother upon her own petition for release on March 23, 1962, or in respect to its subsequent directives and indorsements set forth above. Indeed, no issue was raised as to the exercise of the discretion by our predecessor Domestic Relations Court in any previous determination; nor should there be such issue here in a habeas corpus proceeding since no appeal is involved, nor, if this were deemed a petition in the Family Court to terminate placement, has there been request for rehearing by the Judges (of the Domestic Relations Court) who originally *507 determined the matter of neglect and denied the petition for release.
No exception was made to the ruling at the current hearing in this matter, that only a change of circumstances since the March 23, 1962 denial of the petition for release would be considered. Indeed, such a hearing by a Justice of the Supreme Court would seem inappropriate in view of the full powers possessed by the Family Court which, its predecessor court having already properly adjudged custody of the child as neglected, has continuing power fully to vacate, terminate, or modify its former orders from time to time as changes of circumstances indicate. But in order to avoid endless applications by this distressed mother, this court heard the evidence presented by all interested on the issue of change of circumstances and conditions since March 23, 1962, since the petitioning mother had the right to renew her petition to terminate placement, in the Family Court on that ground, 90 days having elapsed since March 23, 1962. (Family Ct. Act, § 366.) A similar adjudication on the merits was allowed by the Court of Appeals in affirming the discretion so exercised by the trial court, even though the original petition for writ of habeas corpus had been grounded upon alleged jurisdictional defect rather than on the merits. (People ex rel. Riesner v. New York Nursery & Child’s PLosp., 230 N. Y. 119, 125 [opinion by Judge Cardozo for a unanimous court]): 1 ‘ Without objection directed to the form of the petition [based upon a ‘ supposed defect of jurisdiction ’ in the Children’s Court], the case was heard upon the merits, and upon the merits was determined. The result was an exercise of discretion with which we may not interfere * * * The order should be affirmed ’ ’.
The dignity and benefit of res judicata should be accorded the March 23, 1962 decision of the Domestic Belations Court, both by the Supreme Court which should not sit in judgment on the discretion exercised by that court properly acting within its own ample but limited powers, as well as by the successor Family Court which should not retry the same issues decided by another Judge of that court but confine itself to changes of circumstances and conditions since March 23, 1962. The issue decided by Judge Dyer in the Domestic Belations Court on March 23, 1962, on petition applying for release of this child from custody of Jewish Child Care Association, was the same issue now presented under the new Family Court Act effective September 1, 1962, the language of the two statutes being substantially identical in this respect. (Domestic Belations Ct. Act, § 86, subd. 1; Family Ct. Act, § 365.)
*508 It has been held, not only by Judge Van Vooehis as quoted above, but also in the Standish case below cited, that a court of equity will not review in a habeas corpus proceeding, matters adjudicated between the same parties by another court properly exercising its discretion as to custody of a child. Such a holding was made in support of a Virginia decree as to custody, rendered by a court of jurisdiction parallel to that of the Supreme Court, on the ground that successive writs of habeas corpus by the same petitioner or relator, because of the very burden of endless litigation, would convert this historic and favored writ from one serving the ends of justice, to that of an instrument of oppression to those having custody of the child and indeed to the child himself. (Matter of Standish, 197 App. Div. 176, affd. 233 N. Y. 689 [2d Dept.].) The Appellate Division held that mere disagreement by the New York Supreme Court as to the best interests of the child was not a proper ground for transferring custody of the child from an aunt to the parent, in the absence of proof of a change in conditions since the Virginia habeas corpus decision, and on this ground the New York Court of Appeals affirmed without opinion. This holding was expressly followed in People ex rel. Tull v. Tull (270 N. Y. 619).
The same effect of res judicata will be accorded to a decision and judgment of a Domestic Relations Court acting within the scope of its limited authority, in a subsequent proceeding in another court of unlimited jurisdiction. (7 Carmody-Wait, New York Practice, p. 463 et seq.; Restatement, Judgments § 68; People ex rel. Anonymous v. Areson, 195 Misc. 609, supra; People ex rel. Silas v. Pugh, 136 Misc. 547, supra.) The conclusive effect given to the judgments and decrees of sister States under the requirement of full faith and credit, and to those of foreign courts under the doctrine of comity, goes by the name of res judicata and collateral estoppel by judgment, in respect to the judgments of courts of our own State.
There have been Supreme Court Justices who, absent the preliminary history of supervision by the Domestic Relations Court, have sought to preclude oppressive multiplicity of successive applications for habeas corpus writs, by specifying a lengthy period of peace after custody is awarded. However, in view of the legislative intent evidenced by spacing the renewal of successive petitions to terminate placement at a minimum period of 90 days (Family Ct. Act, § 366) it would seem appropriate not to limit this mother more strictly in the Family Court by decisions based upon Supreme Court powers. She is advised however, after observation of the embarrassment *509 shown by the boy at the hearing in this court on November 21, 1962, that self-restraint on her part is better for the welfare and peace of mind of her son.
For this court finds that change in the condition of the emotional instability of this mother has not occurred since March 23, 1962, and is not to be expected in the future in any substantial sense. This mother is, by her nature, aggressive and impatient with her son, and is quite unable to control a smothering maternal solicitude which manifests itself in fault finding and in unwavering determination to impose her views as to this boy’s way of life and life’s goals upon him, whether he can profit by her plans or no.
While such mother love by an otherwise fine woman with the commendable background of a school teacher, might be unobjectionable if directed to another only child, a most adverse effect is obvious in respect to this only child. The boy shows unmistakable signs of having been utterly cowed when younger, and he is now, as he approaches his 17th birthday on January 2,
1963, almost miraculously emerging, without full confidence yet, but with gathering strength derived from years of support from Jewish Child Care Association and a foster home in company with other boys, upon the path of self-reliance and self-determination and maturity generally.
Jewish Child Care Association allows day-time visitation by the boy with his mother each Saturday. The evidence concerning these visitations given both by the mother and the boy convinces me of the wisdom of continuing this supervision under the care of the Jewish Child Care Association in its discretion to alter the allowable visitation from time to time.
The only hope for termination of care by the agency and custody by the Commissioner of Welfare, and restoration of custody to the mother would be development of further beneficial change in the boy toward strength and maturity. Expert testimony by the social worker who knows this boy best convinces the court that the prospect for a sound and beneficial resumption of the custody of this boy by his mother would, as it now appears, be likely to coincide with the time when the boy will have been graduated from high school and thereafter be firmly launched in gainful employment of his own choosing. The mother will not rest unless a college course is pursued, although the boy and the Jewish Child Care Association may continue to oppose this plan. The boy asked leave as a witness not to express his wish in respect to his mother’s present application for his custody, for fear of offending his mother. The inference is inescapable, not only as to this boy’s own choice, but also with *510 respect to Ms inability to make known Ms own basic decisions in the presence of his determined mother.
While the wishes of the minor as to his own custody are not controlling in deciding where his welfare lies, they are given weight in accordance with all the circumstances. A boy approaching 17 is entitled to have his views treated with respect by the court especially when the other evidence substantiates that his care and welfare is served thereby (Family Ct. Act, § 365, subd. [a]). He should not now be compelled to rejoin his mother in her custody. (Matter of Stuart, 280 N. Y. 245 [1939].)
While a parent usually speaks for a minor, before us is a case in which in substance if not technically, I must conclude that the mother’s interest in regaining custody is squarely in conflict with the child’s interest and wishes. In such a case the new law guardian provided for by the new Family Court Act (§§ 241-249) represents the interests of the child even though the parent disagrees. It was clear at the hearing that the law guardian maintained a position no different from and in accord with the child’s own wishes to continue the status quo as indicated in his testimony and in accord with the views of the only expert witness to testify.
The Family Court Act provides that, in neglect proceedings, ‘ ‘ minors have a right to the assistance of counsel of their own choosing or of law guardians * # * TMs declaration is based on a finding that counsel is often indispensable to a practical realization of due process of law and may be helpful in making reasoned determinations of fact and proper orders of disposition.” (§ 241.) This purpose section indicates that the Legislature envisioned the child as having his own counsel in a neglect proceeding, one to represent Ms own particular interests especially, should they be different from those of his parent. In 1962, the Report to the New York State Legislature by the Joint Legislative Committee on Court Reorganization, Family Court Act, in discussing the scope of the law guardian program states: “ The program is limited to children in neglect, delinquency and supervision proceedings because these are the greatest areas of need. The issues presented in these proceedings are difficult. The interests of the children and their parents are not always identical, and a child therefore may not always rely on his parents to serve Ms interests. Even where the parents would, they are rarely equipped to do so in a court of law.” (Introduction, p. 3.)
The purpose and scope of the law guardian in a neglect proceeding are embodied in section 249 of the Family Court Act: *511 “ At the request of a minor in a proceeding under articles three or seven or on request of a parent or person legally responsible for the minor’s care, the family court shall appoint a law guardian to represent such minor if independent legal representation is not available to the minor by reason of inability to pay other counsel or other circumstances. The family court on its own motion may make such appointment.”
As stated in this section, the court shall appoint a law guardian to represent the minor if independent legal representation is not available to the minor due to lack of money or other circumstances.
The petitioner’s attorney was careful to present testimony that the mother is no longer “ unfit ” in the sense that she was when she was at Pilgrim State Hospital, or in the sense that she would be 11 unfit ’ ’ to have custody of a stronger child who does not now require the emotional stabilization and support of Jewish Child Care Association. But for this child at this time I find that this mother continues not to be fit to care for this child, in that she would be unable to avoid causing birri to suffer ‘ ‘ neglect ’ ’ and detriment to his welfare because of the clash of their personalities and his present inability to defend his integrity.
So it was observed by the Court of Appeals in parallel circumstances. In Matter of Stuart (280 N. Y. 245, 249, 251 [1939], supra) the court held:
" It appears from the memorandum of the Appellate Division that the modification was made upon the theory that the law is that in the absence of proof showing that a surviving parent is of bad character or otherwise unfit to have the custody of his minor child, his right to custody is paramount to that of any stranger or other relative * * * We believe that the Appellate Division has accorded to the decisions upon which it relied an effect unwarranted by what has been said in those opinions and not intended when those opinions were written. All of the cases cited by the Appellate Division were cases involving infants under fourteen years of age. Quite different basic principles are involved in the appointment of guardians of infants of tender years than are applicable in the appointment of guardians of infants of more mature age. Nevertheless, each case depends upon its own facts. * * *
“We reach the conclusion, therefore, that the Surrogate was not without power to appoint appellant [stepfather], even though no moral turpitude or other fault on the part of the father was shown * * * No facts appear which indicate an abuse of *512 discretion on the part of the Surrogate. We are, therefore, without authority to review his exercise of discretion * * * (People ex rel. Riesner v. New York Nursery Child’s Hosp., 230 N. Y. 119, 125.)”
To the same effect in custody proceedings are: People ex rel. Hagan v. Alfano (277 App. Div. 565 [1st Dept.]); Matter of Mary I-v. Sisters of Mercy in Brooklyn (200 Misc. 115); cf. Finlay v. Finlay (240 N. Y. 429, 433-434 [1925]).
The cases in the Court of Appeals holding that the parent has an absolute right to the custody of a child unless such parent be found “ unfit ” (People ex rel. Portnoy v. Strasser, 303 N. Y. 539; People ex rel. Kropp v. Shepsky, 305 N. Y. 465) are not applicable here in view of the finding above that this mother continues to be not fit to have custody of this child at this time. The concept of unfitness and neglect must be viewed with more flexibility when custody is involved, as distinguished from permanent termination of parental rights either immediate or inevitable, as seemed to be involved in the Portnoy and Kropp cases (supra). Compare the article by Professor Monrad Gr. Paulsen, published in “ Justice for the Child, The Juvenile Court in Transition ” (p. 74 et seq.): “ Not surprisingly the meaning of ‘ neglect ’ turns on the goal of the proceeding.” These cases, moreover, concerned very young children. In neither of those cases, contrary to this one before us, was detriment to the welfare of the child found in the prospect of immediate recovery of custody by the parent, nor was there presented a prior finding of neglect made by a court of competent jurisdiction.
I therefore find and conclude that this boy’s care and welfare require, and his interest will best be served by, continuing the present posture of his custody. The writ of habeas corpus issued herein is therefore dismissed, upon the terms of the following order:
obdebed, that said writ of habeas corpus be and same is hereby dismissed; and it is further
obdebed, that placement of Fred Mittenthal in the custody of the Commissioner of Welfare, City of New York, in the care of the Jewish Child Care Association, is hereby extended and continued until December 27, 1963; and it is further
obdebed, that a petition under section 362 of the Family Court Act, for the termination of said placement, may not be made by the petitioner for a period of 90 days after the date of this order.