Millard L. Midonick, S.
The issue drawn presents a problem so fundamental of statutory construction, and even validity, of the alleged “abandonment” by the natural mother of her infant child, that this opinion is undertaken to clarify for trial whether or how a mother can be compelled against her will to lose her child to adoptive parents, and, conversely, how a child can be freed from the obstacle of the parent’s alleged unjustified refusal to surrender her child for adoption if that is what the infant’s best interests require.
Counsel for the respondent mother, who are of the staff of the Legal Aid Society, move to dismiss the petition before trial on the principal ground that the statutory scheme under the *943 Social Services Law permits a finding of parental “ abandonment ” where the natural mother is opposing same and is demanding the restoration of custody. This, argues the natural mother’s attorney, deprives her of her rights to block adoption by Withholding her consent, and her rights to custody of her infant child, thereby denying her due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States of America.
Such abandonment as defined by sections 371 and 384 (subd. 5) of the Social Services Law, it is argued by respondent mother, is insufficient to sever the parental-child ties forever by laying the basis for a nonconsensual adoption.
The questioned statutory provisions require proof that the natural parents ‘ ‘ have abandoned such child for the period of six months then next preceding” (the petitioning agency is prepared to prove six years’ abandonment which is far longer than the amended statute which provided one year’s abandonment at the time this mother gave consent for foster care, not adoption, placement). Social Services Law, § 384, subd. 5. “ Abandoned child ”, according to section 371 (subd. 2) of the Social Services Law “ means a child who is abandoned or deserted in any place by both parents [the natural father, who never married the natural mother, is not now claimed to be involved in any way], or by the parent having its custody [the petition alleges that the respondent mother consented to foster care placement when this child, born in 1966, was one month old, and has never visited her child since] or by any other person or persons lawfully charged with its care or custody, and left
(a) in destitute circumstances, or
(b) without proper food, shelter or clothing, or
(c) without being visited or having payments made toward his support, for a period of at least six months, by his parent, guardian or other lawful custodian without good reason', (emphasis supplied).
It would seem that the phrase “ without good reason ” modifies the entire quoted provisions of section 371 (subd. 2) of the Social Services Law. Upon these three words, therefore, the constitutionality of the entire statutory scheme must stand or fall. Since it seems plain from the allegations that the respondent mother was a welfare recipient with two older infant children in her custody substantially throughout the six years of this child’s lifetime, respondent maybe able to excuse the failure to supply support, food and clothing, by proof of inability to earn a livelihood. She intends to try to prove inability to find *944 shelter sufficient to accommodate this third child during the entire period of six years. How she can successfully excuse failure to visit the child for six years, by finding fault with the Commissioner of Social Services and the Spence-Chapin Adoption Service, remains to be heard at trial.
The basic, and in my view the only sustainable, thrust of the respondent mother’s claim of unconstitutionality, lies in the complementary propositions (A) that the Court of Appeals has established that no natural parent can be permanently deprived of custody of her young infant child without parental consent, absent abandonment, unless that parent is “ unfit ” (cf. People ex rel Kropp v. Shepsky, 305 N. Y. 465; People ex rel. Portnoy v. Strasser, 303 N. Y. 539; Matter of Bistany, 239 N. Y. 19), and (B) that no such permanent deprivation can be decreed where a parent is fit enough to care for her other young children, unless her unfitness for this one is proved in the same manner as required by another statutory scheme leading to a finding of “permanent neglect” under the Family Court Act (art. 6, part 1). Perhaps unfitness is not the test under the “permanent neglect” provisions of the Family Court Act, but rather that the “ permanency ” of the neglect, that is to say, a true intention permanently to “abandon”, or permanently to be unable to care for, the infant is requisite to be inferred from the provisions of the Family Court Act. That statute expressly mandates the custodial agency to try to encourage and strengthen the parent-child relationship. Under sections 611, 614 and 622 of the Family Court Act, the agency must plead and prove that the parent has substantially and continuously failed to maintain contact with the child or the agency with whom the child was placed for a period of more than one year and that the parent has failed to plan for the future of the child, although physically and financially able to do so, “notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship ”. The 1971 amendment of section 611 of the Family Court Act continues the one-year period, but excuses proof of diligent efforts to encourage and strengthen the parent-child relationship when such efforts are detrimental to the welfare of the infant. (L. 1971, ch. 901.)
This issue is thus clearly focused: Does abandonment for six months “ without good reason ” as it is put in section 371 (subd. 2, par. [c]) of the Social Services Law, impose a standard or quantum of proof less rigorous than requiring the agency’s ‘ ‘ diligent efforts to encourage and strengthen the parental relationship ” for one year unless such efforts are detrimental to *945 the welfare of the child, as it is put in sections 611 and 614 of the Family Court Act?
And, perhaps more important, even if the two statutes are construed to have substantially the same meaning (apart from the time requirements), can an infant’s right to a permanent home be frustrated by the failure of parent and/or agency to plan for the child?
Respondent mother argues that the Legislature did not intend to permit a finding of “ abandonment ” except where the natural parent has truly disappeared for a period of at least six months next before the petition filing, and cannot with reasonable diligence be found by the petitioning agency. Such a parent will not appear in the abandonment proceeding either in Surrogate’s Court or Family Court, and if such a parent were to be found during the proceeding and to make an appearance, the respondent argues that such an answer denying the allegations must of necessity prevail. This argument, asserts the opposing mother respondent here, applies to assist her in her motion to dismiss now made.
Contrary to this novel argument, this court discerns no such intention of the Legislature, since all indications literally make plain that the Legislature did not envisage that petitioners in abandonment proceedings can prevail only on default of the respondent.
Nor is it necessarily incumbent upon the Legislature to enact but a single pathway to disestablish the parent-infant tie as a prelude to freeing the infant for adoption against the parental will. That the Legislature intended a differing requirement under section 371 (subd. 2) of the Social Services Law from section 611 of the Family Court Act is plain enough from the 1969 amendment of section 384 (subd. 5) of the Social Services Law to reduce the period of abandonment, whatever abandonment may mean, from one year to six months, while leaving unchanged the permanent neglect period of section 611 of the Family Court Act at the one-year duration.
The brief for the respondent mother properly comments:
1 ‘ The concern of the legislature for the rights of natural parents is evident also in the memorandum of the Joint Legislative Committee on Child Care which considered the 1969 amendment to Social Services Law § 371 (2). The 1969 amendment shortened the former time period of one year and defined an abandoned child as one who has been deserted and whose parents fail to visit or support him without good reason for six months. The change was considered desirable in order to *946 increase the child’s chances of finding an adoptive home and permit the agency to commence a proceeding for guardianship earlier in those cases where the child has been truly abandoned. The memorandum states:
“ ‘ We are aware that fear has been expressed regarding a possible conflict inherent in this bill between parental rights and the best interest of a child.
‘ ‘ ‘ The law requires that the failure to visit or support must be done without good reason before the court can find abandonment and commit guardianship and custody. This bill in no way detracts from this protection of parental rights. ’ (emphasis in original.) 1969 New York State Legislative Annual, pp. 333-334.”
At long last we see the Legislature coming to grips with the basic conflict between parental rights and infants’ rights. Too often a preoccupation with parental rights tends to blur the essential right of an infant to end the limbo of foster care (or shelter boarding care) and secure a permanent parental home either with his natural or adoptive parents. Parental “ rights ” must not be emphasized to the point of denying the child a parental “ home.” The courts have tended to evade or avoid the superior right of an infant to the protection of a permanent home as the most essential element of its emotional well being, by repeated assertions that the best interests of an infant always rest with the blood-related parent, unless the parent is unfit, or has surrendered the child irrevocably for adoption, or has “ abandoned ” the child intentionally. This may be so, if the concept of abandonment be construed by the courts liberally enough so that the constitutional rights of the infants, rarely asserted, are not derogated or infringed. That the courts have sometimes harkened sufficiently to infants’ constitutional rights, is illustrated not only by the parental unfitness doctrine, but also by the strong probative weight given to older infants’ expressed desire for a home other than the parental home, if such other home is suitable and reasonable. (Cf. Matter of Stuart, 280 N. Y. 245; Matter of Lincoln v. Lincoln, 24 N Y 2d 270; Matter of Mittenthal v. Dumpson, 37 Misc 2d 502.) Of course, those cases involved custody only, not permanent termination of parental rights, and so are not controlling here.
We turn now to the quintessential meaning of intentional abandonment of an infant by a parent. The petition does not purport to allege that this natural mother ever expressly abandoned her child permanently. She did consent to her placement for foster care; her written consent form signed by her did con *947 tain a warning that her failure to visit her child for a period of 12 successive months or more without giving a satisfactory reason, may result in a decision by the Commissioner of Social Services to exercise his judgment for the best interests of the child, to place the child in a family home with a view to subsequent adoption. I am not impressed by such boiler-plate warnings, and so I do not expect it can be proved at the trial that this mother, then unrepresented, would remember (if she understood) such a proposition over the next six years during which she persistently failed to visit her child. What may destroy her right to regain custody of her child, is her failure to visit the child for so lengthy a period, if “ without good reason ” as the Social Services Law provides, and, if during this time the child has formed an abiding attachment to her prospective adoptive foster parents and does not know her natural mother or expect her natural mother to enter her life as a custodian. If these allegations can be proved, as must be assumed on such a motion as this to dismiss for failure to state a cause of action, then the natural mother’s inaction in not visiting or even trying to visit for the first three years of her child’s life, may speak more loudly than her refusal to give up that child for adoption. Such continuing and protracted lack of interest, effort and contact, if proved, may well lead to a finding that this infant’s constitutional, as well as statutory, rights to an adoptive home with the only psychological parents she has ever known, may be infringed by dismissing the petition to free her for such adoption, on the ground of abandonment by inescapable inference from these facts, instead of granting the petition. (Cf. Matter of Klug, 32 A D 2d 915 [1st Dept., 1969], further proceeding on remand sub nom. Matter of Clear, 65 Misc 2d 323 [1970]; but cf. Matter of Lewis, 35 Misc 2d 117, affd. 19 A D 2d 621 [1st Dept., 1963].)
At the trial of this issue of abandonment, must the mandate of diligent efforts, unless excused, of the agency to encourage and strengthen the parent-child relationship, be imported from the Family Court Act requirement for a finding of permanent neglect, into the meaning of failure to visit the infant for at least six months “ without good reason”? Can a natural mother safely rely upon the failure of the supervising agency to make diligent efforts to persuade her to visit her child? Or is it instead incumbent on the natural mother to show reasonable initiative to try to visit her own infant without efforts of persuasion to induce her to do so? Can a natural mother, unmarried, who may be in delicate health and preoccupied with caring for her two elder infants under the stress of needing *948 welfare support and needing, as she claims, to find a larger abode to house this third child in a crowded city not known for its hospitality toward fatherless welfare families, and by refusing to sign a surrender for adoption — can such a mother by so proving succeed in showing that her failure to visit (or reclaim) her child for three or more years was not “ without good reason ”, particularly because the Spence-Chapin Adoption Service had not diligently made efforts to encourage and strengthen the parent-child relationship by pursuing her for this purpose? Can the combined fault of the natural mother, if fault is found, and that of the agency and the Commissioner, if their fault in lack of diligence is found, override the best interests of the six-year-old child, if her best interests at this late time lie with her foster parents and their freedom to adopt her?
While I am inclined to accept the able argument of the respondent’s counsel that “ without good reason ” includes substantially the concept of requiring the custodial agency to make diligent efforts to encourage and strengthen the parent-child relationship (unless or until detrimental to the child), yet a failure for so long a period to make such efforts, if found, may not prejudice an innocent child if her best interests require adoption by the only parents she has known for her entire six years of life, her foster parents. The infant’s constitutional rights may require both statutes to be so construed. The results of two. cases may illustrate this trend.
In 1963, the Appellate Division, First Department, affirmed the Trial Judge’s refusal to terminate parental rights in an abandonment proceeding where such termination is arguably easier (Matter of Lewis, 35 Misc 2d 117, affd. 19 A D 2d 621, supra). Paradoxically, the same Appellate Division, even before the 1971 amendment, approved termination of parental rights in a permanent neglect case, even when the mother was continuing to demand return of her child from foster care. (Matter of King, 32 A D 2d 915, further proceeding on remand sub nom. Matter of Clear, 65 Misc 2d 323 [1970] supra.)
I am intrigued by the extraordinary insight of the respondent mother’s attorneys in citing Matter of Steinberg v. Steinberg (18 N Y 2d 492) for the proposition that a policy for permanent neglect, enacted in the Family Court Act, must be followed by all courts in the State, even, under differently worded statutes such as the Social Services Law here involved. Steinberg (supra) involved a holding requiring the Family Court to follow, in a support proceeding for the benefit of a wife, a statutory *949 provision referring only to the Supreme Court and only to matrimonial actions. It would seem similarly appropriate to argue that though permanent neglect is cognizable only in Family Court, all courts should follow its safeguards even in abandonment proceedings, since both proceedings have the very same end purpose — freeing an infant for adoption without parental consent. So far, so good. But due process of law for the helpless infant, under State and Federal Constitutions, may require all courts to construe the language of both statutes together, so that the infant’s best interests are truly served. Thus, if necessary for the welfare of an infant, permanent neglect may have to be construed to approximate abandonment, and vice versa. In 1971, the Legislature in effect so amended “ permanent neglect” to excuse “ diligent efforts” to reunite the parent and child, when detrimental to the child. (Family Ct. Act, §§ 611, 614; cf. Matter of Clear, 58 Misc 2d 699 [1969], revd. and remanded, sub nom. Matter of Klug, 32 A D 2d 915 [1969], further proceedings on remand, Matter of Clear 65 Misc 2d 323 [1970], supra.)
Apart from these fundamental aspects undergirding the respondent’s motion to dismiss, as reflected above, the other points made by respondent are of lesser consequence. Attacks upon the inadequacy of the allegations to state a cause of action because statutory language is not used cannot prevail. The required proof is amply explained in this opinion, and the petition is sufficiently particular to give proper notice, so that no surprise should inhibit any party. (CPLB 3013.) The facts are recited in the petition in meticulous detail, even to the extent of quoting relevant portions of records kept, presumably contemporaneously, in the regular course of the agency’s profession or business. Such recitals of contacts and attempted contacts between agency and parent, and lack of visitation, can be introduced in evidence if a proper foundation is laid. (Kelly v. Wasserman, 5 N Y 2d 425 [1959].) Any amendments to the petition to conform with other required proof, if amendments be needed at all, can be made before or even after judgment, upon such terms as may be just. (CPLB 3025, subd. [c].) Pleadings shall be liberally construed. (CPLB 3026.) If the petition were vague or ambiguous, which it is not, the proper motion is not to dismiss, but to move for a more definite statement. (CPLB 3024, subd. [a].)
The respondent further contends that due process is violated by conferring upon the Judge or Surrogate discretion to notify or not to notify the natural parent of the abandonment proceed *950 ing, of her right to appear and be heard as a party, and to have counsel of her own choosing, and to have counsel made available if she is indigent. (Social Services Law, § 384, subd. 5.)
It is my view that the statutory discretion given to the Surrogate or Judge, cannot be so abused. The respondent is correct in her assertion. The statute must be so construed as to require reasonable procedures and thereby to shield it from constitutional defect. The only valid meaning to be discerned in a statutory discretion not to notify a parent, would be in a case when such an effort would be vain, as where the child is alleged and proved to be a foundling, or for some other reason such as death or disappearance, no parent can be found. Even in case of disappearance, an attorney may under certain circumstances be required to be appointed to .represent the absent parent. Presumably, a parent who has disappeared need not be notified by vain and costly publication requirements, and to this extent the judicial discretion may validly dispense with such notice, although the practice is to publish such notice.
In this case, the respondent mother was known, was not married to the father who did not live with the mother or child, and the mother was in fact personally served and is ably represented by the Legal Aid Society. (Matter of Ellick, 69 Misc 2d 175.)
As for the guardian ad litem’s representation of the infant in the case at bar, no report or expression has yet been received because of illness of the guardian, but this representation will be expected at the trial, and thus the court will be amply assisted by disinterested counsel serving only the welfare of the infant.
As to the point of respondent that the petition fails to comply with the Social Services Law in that no court review of Jennifer’s foster care status was conducted after 24 months in foster care, this is not a defense or an element of the petitioner’s case for abandonment. Such an issue is cognizable by the Family Court. (Social Services Law, § 392.) In an abandonment or a permanent neglect proceeding, such an issue may have some bearing on the issue of whether the mother failed to visit or plan for her child “ without good reason ”, but if relevant at all, it would be more in the nature of an affirmative defense, and even then such proof cannot adversely affect the infant’s substantial interests.
For all of the reasons set forth above, the motion to dismiss is denied. The trial of this proceeding shall commence before me on Tuesday, April 18, 1972, at 10:00 a.m.