Millard L. Midoeick, S.
This proceeding concerns the alleged abandonment of a two-year-old child, born in wedlock on August 9, 1971, who has not spent a single day in the home of either of her parents. The factual situation here is typical of so many foster care and adoption agency commitment proceedings for the purpose of freeing infants for adoption against or without parental consent, that an opinion may be of assistance.
Louise Wise Services, a licensed foster care and adoption agency, obtained custody of this child shortly after birth from the Department of Social Services of the City of New York, has supervised this child in two foster homes and now petitions this court to find this child to be “ abandoned ’ ’ by both of her parents, so that the child can be freed for adoption against and without the parents’ consent.
Both parents attended the hearing in this case, each represented by a separate attorney, since each parent claims custody of this child although they are living apart and never intend to reconcile. The child was represented by a separate guardian ad litem and the petitioning Louise Wise Services had its own counsel.
Under sections 384 and 371 of the Social Services Law, a child can be committed to a licensed adoption agency as abandoned if for six months next preceding the institution of such a proceeding as this, its parents have abandoned the child by failing to visit the child or by failing to provide support for the child “ without good reason ”. The agency having custody is mandated by law to use reasonable means, prior to abandonment, to encourage and strengthen the child-parent relationship except when such efforts will be detrimental to the child’s welfare. (Family Ct. Act, §§ 611, 614, 622; Matter of Jennifer “ S ”, 69 Misc 2d 942 and 951.)
The mother has visited Vanesa only once during her life, on January 13, 1972. The father has never visited the child.
At this time the mother of Vanesa is 20 years of age and the father is 23. The mother is and has been on public assistance in New York City for extensive periods of time; the father is temporarily in the same position, claiming that as soon as an injury to his knee will heal he will resume earning a living.
*619 Both parents testified in open court that they had been narcotic addicts, dependent on heroin and other hard drugs at the time of the birth of Vanesa. It is also conceded that Vanesa was born having narcotic withdrawal symptoms. A new-born baby having withdrawal symptoms is prima facie a neglected baby under article 10 of the Family Court Act, and custody of such a child can be withheld from the parents responsible until after court hearings and other safeguards. (Cf. Family Ct. Act, § 1012, subd. [f], par. [i], cl. [B]; :§§ 1021, 1024, 1028, 1046; Matter of “John” Children, 61 Misc 2d 347.) No such application for custody or return of this child was made by either of these parents until now. The court infers that the application for custody at this time was triggered by the petition in this case; had there been no petition, the court is convinced and finds that neither of these parents would have made any formal application for custody.
For several months after Vanesa’s birth, before the parents separated, they lived “ on the streets.”
Both of these parents have testified that they had been drug free for at least one year at the time of the recent hearing, although no expert, laboratory or disinterested proof of this testimony was offered. Both of them have strengths which might make appropriate their custody of their child after sufficient proof of stable ability, if they had not “ abandoned ” the child within the meaning of the statute. Among her other good qualities, the mother has recently taken her high school equivalency examination and is awaiting the results. Apparently with the aid of her own mother she cared for her one other child,' Naomi, now aged 4, for the first year and one-half of her life, but upon the parents’ breaking up for the last two and one-half years Naomi has been largely under the sole care of the maternal grandmother in that person’s home.
There has been no contact for years between the father and the older child Naomi, due in part to a warrant for the arrest of the father in the hands of the maternal grandmother for alleged beating of the mother. Instead of pursuing his rights to child visitation with respect to Naomi, the father simply failed to press that aspect of his parental duties and rights altogether. The mother, on the other hand, has been visiting Naomi, after separating from the father, at least twice a month except for the three months that she was denied privileges at Olympus House where she was a voluntary resident patient. About one year ago, she entered Olympus House and resided there for nine months because of her addiction to alcoholism *620 to which she apparently fell prey while freeing herself from narcotics addiction. The mother was further plagued by hepatitis and other illness which caused her to leave Olympus House for hospitalization and after that hospitalization, she declined to return to Olympus House which was a voluntary program in any event. The mother is now living with a woman friend and the three minor children of that woman. She alleged she has a room of her own, is seeking an apartment in the Bronx and has prospects of a job in the Bronx. She testified that if she could have Vanesa, she would try to persuade the maternal grandmother to care for Vanesa during the working day at the Brooklyn home of the grandmother. As indicated at the hearing, this unrealistic plan would call for excessive subway riding for herself and her child. As a response she gave the alternative plan that she would seek a local child day-care center, a possibility which she had not yet investigated.
The father of Vanesa is living with a woman not his wife in the home of his mother in this metropolitan area. He claims that he can take care of this child with the help of these adult women.
The difficulty with all of these contentions of the parents is simply that these proposals come too late. It is obviously not “ good reason ” for parents to fail to visit their child for two years, that they were narcotic addicts at the time when the child was born. For many months after the child’s birth, Louise Wise Services endeavored to persuade the mother to make baby visits at the office of Louise Wise Services. Extreme difficulty was encountered in making contact with the mother who did not answer letters or telephone calls and who moved from time to time without notifying the agency. The agency social workers were compelled to seek out the mother by physically calling at her various homes. Upon succeeding in finding the mother, several appointments were made at Louise Wise Services. On one such occasion, the baby was brought from the foster parents to Louise Wise Services for a baby visit, but the mother did not appear at the appointed time. Louise Wise Services properly declined to bring the baby again to their headquarters until the mother showed enough responsibility to keep appointments with the social worker. This, too, she failed to do on several occasions, with and without cancellations by her. The mother’s only explanation for these failures and cancellations was that she was “ confused ” in attempting to extricate herself in various programs from first narcotic addiction and then alcoholism, and that she could not compatibly live with her own mother.
*621 The father was practically never to be found until recently. His testimony indicated that for nine months after Vanesa’s birth he returned to Puerto Rico because of an emergency affecting his own mother. After those nine months, he succeeded in bringing his mother to the metropolitan area where they now live. Throughout virtually the entire life of Vanesa, her father failed to keep Louise Wise Services notified of his whereabouts, whether in the United States or Puerto Rico, so that whether or not he had some temporary reason for his lapse for part of the period, he certainly compounded the difficulties by disappearance. From all that appears, the disappearance to Puerto Rico may have occurred long before the six months next preceding the institution of this proceeding so that no affirmative good reason appears for his failure to make any effort to visit this child throughout her life.
Vanesa’s present foster parents are providing not only a fine and loving home for this child but are desirous of adopting her. The child is surrounded by love and affection and a good family. She obviously knows nothing about her natural mother or father, having acquired psychologically another set of parents. She has been with her current foster parents for about one year.
The essential two issues are therefore these:
a. Has this child Vanesa been abondoned by both parents within the meaning of the statute, and
b. If so, can those natural parents overcome the abandonment by a corrected life style suitable for baby rearing.
' As to the first issue, I hereby find that there was no “ good reason ” for the failure of the mother or for the failure of the father to visit this child for more than six months next preceding the institution of this proceeding.
At no time has either parent expressly consented to surrender this child for adoption. They urge that their conduct does not evidence an intention to part with their parental rights. I hold that abandonment is not defined in terms of intention, but rather in terms of conduct such as the failure to visit a child for more than six months without good reason (Social Services Law, §'§ 384, 371). The statutory definition of abandonment recognizes how the infant reacts to loss of contact over a lengthy period; the infant’s moral and temporal welfare has little if any relation to the parents’ intent, merely to the tragedy of being without a parent. The “ confusion ” and failure of this mother and father should not be compounded by the confusion of the •infant which would result from removing her from a loving home. As Surrogate Benxett has held in Matter of Anonymous *622 (13 Misc 2d 653, 657), where adoption was granted to a stepparent despite refusal to consent by one natural, divorced parent: “ the court owes an obligation to the child and the adopting parents to find an abandonment when a proper showing has been made that the parent has neglected and refused to perform his natural and legal obligations of care and support, when he has withheld his presence, the demonstration of parental affection, or the opportunity on the part of the child to display filial affection. Failure to perform such duties by a parent constitutes a relinquishment of parental claims and an abandonment of the child ”. (Accord, Matter of “ Anonymous ”, 71 Misc 2d 448 [Surrogate’s Ct., Queens County].)
Reference is also made to the two decisions of my own in Matter of Jennifer “ S ” (69 Misc 2d 942 and 951), where I pointed out in great detail in connection with a five-year-old child who had had practically no contact with the mother, that there comes a time when psychological parents with their love for a child and the child’s love for them must be preferred over the biological parents whom the child would not recognize as a parent at all.
As to the second issue concerning alleged rehabilitation of the parents, the answer must be in the negative. This would be so even if the parents were completely well and had a proper home or homes for the child. There is even doubt, however, about this, since glib testimony about future jobs and future apartments (and future marriage on the part of the father) may prove to be as illusory as the baby visits were when they were available to these parents. For the reasons stated, I find below that these parents are each unfit to be given custody of this child because of the abandonment and independently even if there had been no abandonment.
I find that each of these parents, due to the facts amounting to abandonment, and their conceded former addiction to narcotics, and their failure to substantiate their bare testimony concerning their cure and stability, and their precarious, makeshift and even transient home conditions, are each plainly unfit to have the custody of this child. If because of abandonment, we are to treat the parents as strangers to this infant, then serious consideration by Louise Wise Services for foster care or adoptive placement in the home of either of respondent parents would be unthinkable as a plain mis judgment. Natural parents who have abandoned their infant child must be regarded as though strangers, and judged by this standard, these parents are unfit.
*623 In such circumstances, the agency would he ill advised to hazard the moral and temporal well-being of this infant of tender years to the custody of either parent, even if no permanent home were being enjoyed by this child. Upon completion of hearing all of the evidence, it is thus apparent in this case that the evidence of the loving and established foster home relationship is unnecessary, since this court should not substitute its discretion for that entrusted to the licensed child care agency where either a clear abandonment is established, or clear independent unfitness is found.
It would also be error for the court or agency to delay the final decision to free this child, in order to give the respondent parents more time to rehabilitate themselves. The policy of the State of New York to assure early finality for infants in cases of uncertain custody, has been announced unmistakably in amendments to section 392 of the Social Services Law in 1971 and 1972. Each foster care agency must submit to the Family Court after each 24-month period of foster care a review of such foster care status, and if indicated by a hearing, that court may direct the agency to “ institute a proceeding to legally free such child for adoption,” or to permit the foster parents to do so. Thus children are required to be protected against lengthy temporary status in limbo.
It may be that parental misconduct amounting to abandonment, and resulting in a proper court finding of abandonment, in and of itself requires a finding that parental abandonment makes such a parent legally unfit to assume custody of an infant. (Cf. Matter of Jennifer “ S ”, 69 Misc 2d 951, 954, supra.) Surely the Legislature’s action in 1969, reducing the period amounting to abandonment conduct from one year to six months (Social Services Law, § 384, subd. 5; Matter of Jennifer “ S ”, 69 Misc 2d 942, 945, supra), indicates a growing concern for the gravity of the permanent ill effects upon an infant resulting from deprivation of a meaningful parental relationship.
I find, finally, that the moral and temporal best interests of Vanesa would be served by adjudging her as I hereby do, an infant abandoned by each of her parents and thus free for adoption without their surrender or consent.