In the Matter of the Adoption of ANONYMOUS, a Minor under the Age of Twelve Years.

Surrogate's Court, Queens County, December 21, 1936.

*William J. Rapp,* for the petitioner.

*Charles W. Froessel* and *David M. Wolff,* for the respondents.

HETHERINGTON, S.   Application is made for the vacating of an order of adoption on the ground that petitioner was induced to surrender the child and consent to its adoption by fraud and misrepresentation concerning the nature of the papers she signed. The situation is by no means without difficulty and such difficulty largely arises from a sympathetic regard for the feelings of the parties concerned.   Petitioner and respondents manifest a strong affection for the child; and under the circumstances there is no way in which it can be shared.   Its interests also must be considered.   Petitioner found herself in a situation unfortunately not infrequently met with.   She yielded to the wiles and promises of a man who betrayed her confidence and when the natural result of their relations became apparent, could not keep his promise to marry her because he was already married to another, which fact petitioner says was only then disclosed to her.   Confronted with a situation that she felt would bring grave embarrassment, if not shame, upon her, a young woman of good family and breeding, she turned to her mother who laid the matter before her husband, and he in turn consulted the family physician, who arranged to have petitioner go to a hospital located several miles from the home town, there to have her child without knowledge of the fact becoming public.   Thither she went accompanied by her father, with a letter of introduction from the family doctor.   In order to aid in the secrecy, she registered under a name, both given and surname, other than her own.   In due time her baby was born and still no prospect of wedlock with the father.   The time of her

discharge was hastened, she says, by an illness of her mother who was away from home. Arrangements were being made for her father and her to go to the mother. The papers, now disputed, were presented and signed. Petitioner says she was told they had something to do with the charges of the hospital and its release; that they were given her by an employee; that she took them into her room and there, alone, with no interference, filled in, in her own handwriting, all the spaces left blank for the furnishing of the necessary information to complete them, and that being called to the telephone, she left them thus completed in the room while she went to answer a telephone call, and that on her return she found them missing and, on demanding them, their return was refused. These documents are simple in their language; the substance is that the signer surrenders the child and consents to its adoption. Petitioner asserts that she did not know this, but she is an intelligent young woman of some twenty-five or twenty-six years at the time; she has had primary private school training, collegiate education and commercial secretarial development, after which she engaged in office work wherein she made up insurance policies, filling in the names and addresses of the insured parties with a description of the property insured and the terms. Surely she was equipped with both intelligence and knowledge sufficient to comprehend the contents of the papers she was signing; added to this, an examination of the papers will clearly indicate that, using a name longer than her own, she took precaution to commence the writing thereof in the blank space at a point which assured sufficient room to write the name without cramping; this also with regard to her address and the name of the child; all correctly written in. While she denies that she acknowledged the execution of the instrument, a witness and the notary public attest to the fact and their testimony was unshaken and convincing. The instrument bears the signature and seal of the notary and both testify that it was signed before such notary as well as acknowledged. Thereafter petitioner left the hospital and her child, and although she says that later she endeavored to reclaim it, the rights of the respondents had intervened.

Thus was laid the foundation for the adoption and in it there can be found no evidence whatever of fraud or misrepresentation. Counsel for petitioner argues that children cannot be taken from locality to locality like puppies and kittens; it is an unfortunate comparison for neither can they be discarded like such. Furthermore, even were all things equal between the parties, it must be borne in mind that petitioner herself created the situation, hence cannot now complain of its results.

Acting upon the foregoing, the respondents adopted the child in the manner and form prescribed by the laws of the State of New York, have had it for some eighteen months or more, are greatly attached to it and are caring for it as their own with every indication that it will be loved and nurtured, educated and reared in a suitable and excellent manner. Sympathy with their situation must also be considered, for while on the one hand the natural mother, in her anxiety to avoid notoriety, gave away the child, these respondents took it in and have learned to love it as their own. And what of the child; the petitioner says she wants it again. She is young and attractive; is it not quite within the bounds of possibility that she may want to marry and in such event will not the child again prove an impediment and petitioner wish she had left it where it now is? It should be noted in passing that the father of the child is now dead, having been accidentally killed in an automobile accident, so hope of marriage with him is gone. To the suggestion of a future marriage and the child being an obstacle thereto, counsel for petitioner says there is present prospect thereof and that the man who would marry her knows all about the situation and is, nevertheless, willing to take both mother and child. To that again arises the question of the child's welfare, perhaps not immediate, but in the future. It may well be that honestly loving her, some man in his present ardor will promise, intending now to keep such promise, to take petitioner's child as well as herself, but as time passes and children of his own come, or should differences arise or disagreement concerning the rearing of this child come up, will he not be prone to cast up the child's antecedents to its embarrassment and detriment? The risk is too great and the assurance of the child's welfare if left with its foster parents far outweighs the sentiment arising on behalf of the natural mother. Surely she herself will see this upon calm reflection.

It must be held that there was no fraud or misrepresentation perpetrated here; that the relinquishment of the child and consent to its adoption was an act of her own free will and accord on the part of petitioner and constitutes an abandonment; hence the prayer for relief is denied, the petition dismissed and the order of adoption confirmed.