Samuel J. Silverman, S.
This is an application pursuant to section 118 of the Domestic Relations Law for an abrogation by consent of the adoption of a child. The parties consenting to the abrogation are the same parties who consented to the original adoption, i.e., the adoptive parents and the agency.
The child was born in April, 1966 and very shortly thereafter was surrendered for adoption to an authorized adoption agency. *1078 On May 13, 1966, the child was placed with the prospective adoptive parents, the present petitioners, with a view to adoption. In June, 1967, pursuant to an agreement of adoption verified that day, an order of adoption was made in this court.
Among the supporting papers on the adoption was a letter from a physician stating that he had seen the child in April, 1967 and that the child was in good health. About two months after the adoption, on a routine physical examination by that same physician, a pediatrician, the physician noticed what struck him as abnormal behavior of the child which made him suspect that the child was autistic, i.e., a form of schizophrenic illness, and that perhaps the child was also mentally retarded. At the suggestion of this physician the child was examined by another physician who felt that the clinical picture was one of early infantile autism.
Shortly after the examination by the physicians in August and September, 1967, custody of the child was by agreements of September 13 and 26, 1967 resurrendered to the agency, apparently pursuant to section 384 of the Social Welfare Law. The parties were apparently under the impression that this, in essence, terminated the adoption.
Since September, 1967, the child has not resided in the adoptive parents’ home and, indeed, has been placed by the agency in another foster home, though there has been no adoption in that foster home nor is it apparently likely that there will be a further adoption at least until the child’s further development becomes clearer. Recently the parties have been advised that it would be legally better to have the adoption abrogated and thus the present application has been made.
On the present application it appears, among other things, that the mother petitioner, the adoptive mother, is very seriously ill.
Abrogation of an adoption is, of course, an extremely serious matter. The court has inquired at some length into the matter and the parties at the court’s request have gone to considerable trouble to make inquiries as to both the facts and the law.
Among other things, the court requested That an up to date medical report be submitted. Thereupon the agency caused the child to be examined by another physician who stated that the child does not show signs of significant autism but apparently the child is functioning at a retarded level.
It thus appears highly probable that the child has some serious psychiatric problem or mental retardation problem, the exact nature of which it is unnecessary to determine. It is also clear *1079 that this problem was not known either to the parents, the agency or the court at the time of the application for adoption and the making of the order of adoption in June, 1967, and that the nature of this illness is such that if known there would probably have been no application for adoption and thus no order of adoption. Very shortly after the order of adoption was made the parties discovered this illness and called the attention of the adoption agency to the matter, and the child has been taken back by the adoption agency.
It is thus further clear that the child is not now, as a practical matter, a part of the adoptive parents’ family and household and has not been for the last nine months. It also appears to me that it is psychologically impossible and undesirable to force the return of this child to these adoptive parents at this time.
It thus appears to me that it will be for the best interests of this child to abrogate the adoption.
Although the statute relating to abrogation by consent (Domestic Relations Law, § 118) talks only in terms of the best interests of the child, I cannot help taking some note of the situation as to the adoptive parents and the agency. Adoptive parents become such under consensual arrangement and a judgment of a court. Consensual arrangements may usually be rescinded on equitable principles, on the ground of mutual mistake of fact; here we have the mutual mistake of fact of both the adoption agency and the foster parents at the time of the adoption, in that they believed the child not to have any psychiatric problems, whereas in fact he did have serious psychiatric problems. Further, the parties acted promptly after the discovery of that mistake which in turn took place very shortly after the adoption. Considered as a decree, decrees including decrees of adoptions are of course subject to vacation on the ground of newly discovered evidence. (See Domestic Relations Law, § 114.)
"While in general the law attempts to treat an adoptive child from the moment the decree of adoption is made as being in all respects the same as a natural child, this cannot be and is not completely so. Thus the statute provides for abrogation of adoption, sometimes on the ground of later conduct (Domestic Relations Law, § 118, 118-a, 118-b); there is no analogous provision as to natural children. In particular it remains true that the relation of adoptive parents and child, unlike that of natural parent and child, is largely one entered into by consent or contract. When the parties have entered into the adoption under a fundamental misapprehension and have discovered that misapprehension and attempted to “ rescind ” their action very *1080 shortly after the adoption, it would seem unnecessarily harsh to hold them strictly to “ their contract.”
The problem is complicated in the present case by the fact that as a result of the. adoption this adopted child may have a contingent remainder interest in substantial property which may be adversely affected by this abrogation. The illness of the mother may make this point particularly important. In fairness, however, it should be pointed out that the child was resurrendered to the agency before it was suspected that the mother was ill and if at that time an application had been made to abrogate the adoption I have little doubt that it would have been granted.
It is unnecessary at this time for me to determine what, if any, effect the order of abrogation may have on the child’s property rights. Whatever that effect may be, the child did not have these property rights before the adoption but only acquired them as a result of the order of adoption. If then, as a result of the order of abrogation the child is not deprived of anything which it would have had but for the adoption, I think the court should not permit this possible property right to interfere with the abrogation.
In making this determination I do not say that a second adoption necessarily requires abrogation of the first adoption, or that an adoptive child may not be readopted in the same manner as an original adoption of a child who has never previously been adopted. (Of. Domestic Relations Law, § 111.) But in the present case I see no useful purpose to be served by not now abrogating the earlier adoption.
Accordingly the order of abrogation will be signed.