## (May 25, 1971)

■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. ALICE WESSELL, on Behalf of CHRISTINE WESSELL, Appellant, v. NEW YORK FOUNDLING HOSPITAL et al., Respondents.—

Concur

—Kupferman, Steuer and Eager, JJ.; Stevens, P. J., and Nunez, J., dissent in the following memorandum by Stevens, P. J.: I dissent and would reverse and sustain the petition. To bring this matter into proper focus a brief chronology of events is in order. The infant was born December 3, 1968, to the petitioner, presently about 28 years of age and holder of a master's degree in psychology. Though petitioner vacillated somewhat and was uncertain whether or not to place her child for adoption, the thread of a deep and constant love for the child appears from this record. Petitioner wanted to keep this child. She was torn in trying to decide what was best for the child. Petitioner's parents apparently wanted petitioner to keep the child and offered their assistance. Petitioner surrendered the child for adoption February 20, 1969. The child was placed with the prospective adoptive parents on March 10, 1969. All parties agree that within three or four weeks of the date of surrender, which was February 20, 1969, petitioner sought the return of her child. When her request was denied, petitioner initiated a habeas corpus proceeding in April, 1969. Since that time this matter has been in the courts. Certainly if the child had been returned at the time of the initial request, this entire proceeding could well have been avoided, without heartache or undue distress to anyone. The proposed adoptive parents, then childless, now have two children, and the interval of care then had been too brief for deep attachment. The observation that the child has spent most of her young life with the proposed adoptive parents, while accurate, has validity as a supportive argument only because of the interminable delay in these long drawn out proceedings. Though the Trial Judge on this rehearing found against petitioner, the court stated its belief that the child would not be damaged if there were a change. This court on a prior appeal by petitioner reversed and remanded for a hearing with respect to " *any* changed circumstances with respect to the situation of the appellant, particularly her marital status" (34 A D 2d 947, italics added). Thus, while petitioner's marital situation was a factor to be considered, it was not the only factor to be reviewed. The marriage contemplated by petitioner did not take place chiefly, it would appear, because of a difference in the religions of the respective parties and the obligations attendant thereon. The marital status of petitioner cannot be a condition precedent to or solely determinative of her fitness to rear the child. It might have a bearing on the issue of environmental stability in that it might be presumed that the status of marriage affords a measure of permanency both in location and relationship. On the other hand, marriage for the single purpose of gaining court

approval is much too high a price to pay, even under the circumstances here present. This petitioner is well educated, as are the proposed adoptive parents, and has maintained a good work record at a salary adequate for her support and that of the infant. Additionally, her parents, who have expressed a desire to help care for the child, own a two-story seven-room house with three bedrooms, and are possessed of sufficient means, financially, to assist petitioner should that become necessary. A change in jobs or in area location, standing alone, does not warrant a conclusion of irresponsibility or instability. Especially is this true if the change or changes resulted in improved job opportunities. There is no dispute that petitioner surrendered the infant as provided by statute (Social Services Law, § 384). Nor is there any dispute that in a very short period of time thereafter she sought the return of the infant. What is best for the child poses a problem, the resolution of which demands consideration of many factors. An adopted child reared by an otherwise childless couple may well be subjected to experiences which an adopted child as one among natural children of the couple will not encounter. Either could prove to be totally satisfactory or totally unsatisfactory. General experience has demonstrated that a child in the case of its natural parent has a more rounded development when, as here, the parent, by training and educational background with adequate financial resources available, is fit, competent and able to support, educate and maintain the child. The child in a real sense is a part of the mother. The mere act of surrender, occurring as it must have in a period of emotional stress when uncertainty prevailed as to the best course to pursue for the future well-being of the child, should not place petitioner beyond the pale in terms of recovering custody. This was recognized by the Court of Appeals recently in the *Scarpetta* case (*People ex rel. Scarpetta* v. *Spence-Chapin Adoption Serv.*, 28 N Y 2d 185). The court there observed (p. 192) "' the status of a natural parent' is so important 'that in determining the best interests of the child, it may counterbalance, even outweigh, superior material and cultural advantages which may be afforded by adoptive parents * * * For experience teaches that a mother's love is one factor which will endure, possibly endure after other claimed material advantages and emotional attachments may have proven transient'" citing *People ex rel. Grament* v. *Free Synagogue Child Adoption Committee* (194 Misc. 332, 337, 338). Since the adoption has not been consummated, I see no legal or constitutional barrier to the return of the infant should the courts of our State so decide. The conduct of petitioner has not evinced indifference to the welfare of this child, nor is there anything to indicate other than a proper motivation in seeking its return (cf. *People ex rel. Scarpetta* v. *Spence-Chapin Adoption Serv.*, supra). I would reverse and grant the petition.