Jacob T. Zukerman, J.
On October 13, 1972, after an investigation and report by the court Probation Officer, this court approved the adoption of the child by Mr. and Mrs. W.
A few weeks later, the adopting father commenced an action under section 118-a of the Domestic Delations Law to abrogate the adoption on the ground that the adopting mother had not properly evidenced her true intentions during the course of the adoption proceedings, and had obtained the adoption under false pretenses, never intending to remain living with the adopting father, and that she and the child had, in fact, left the father’s home.
In the hearing, it became clear that both parties had hot told the truth to the Probation Officer or to the court, in that they had not disclosed the fact that they were having serious marital difficulties.
The court ordered a new investigation and full psychiatric studies of the parties. These reports were made available to the court. These indicated the following:
(1) There seemed to be no probability or advisability of reconciliation of the parties; (2) the mother and child were living with her family in very excellent facilities; and (3) it appeared that the mother was providing good care for the child and seemed to be able to continue to do so emotionally, physically, and economically.
While, at first, the adopting father urged the abrogation as to both parents, after several adjournments to give the parents and attorneys time to discuss further plans, they agreed with the consent of the Law Guardian (who had been assigned by the court to represent the interests of the child) that it appeared in the best interests of the child to remain with the mother. They urged the court to act accordingly.
In considering the facts, the court is faced with the reality that this child has already been living with the adopting mother for over 21 months and knows no other mother' or family (he had been turned over to the adopting mother a few days after birth). While the court might find sufficient grounds to set aside the adoption as against both parents, for both had participated in deceitful action, it does not seem wise to do so. It would mean turning the child over to an agency for them to find a new home *625 and new adopting parents. The court is convinced that to do so would not be in the child’s best interest.
The court is also confronted with the question as to whether the now unwilling adopting father should be compelled to be a father to this child and to continue this responsibility for the child. Even though the father was wrong in deceiving the court, there seems to be no purpose in forcing a relationship which might be more destructive, rather than helpful, to the child. It is bad enough when a natural father shows lack of concern for his child. Why compound the ill by insisting that an adopting father who has not yet established a close relationship with the adopted child be kept in the picture, possibly oply as a financial resource! Inasmuch as the adopting mother is willing to assume full reponsibility for support of the child and appears to be able to do so, even that aspect becomes less of a consideration in this particular case. ¡Note, too, that the adopting parents are planning to secure a divorce.
After a review of the total situation, and after conferences with the parties and attorneys, and with the assurance that the child will be financially, as well as emotionally, well supported by the adopting mother; the adoption is abrogated as to the adopting father and continued in force as to the adopting mother.