Nathan R. Sobel, S.
May an order of adoption (Domestic Relations Law, § 114) be abrogated upon the petition of the natural parents? This proceeding was instituted after the child had been formally adopted. While many decisions consider the rights of natural parents before adoption, there is no authoritative appellate decision which determines their rights after adoption.
The detailed history of this adoption is discussed in a separate unpublished opinion. Brief facts only are here noted.
"Nicky”, the adopted child, was born on March 30, 1971. A few days later, on April 16, 1971, through the Police Department, the child was delivered by the parents to the Bureau of Child Welfare, Department of Social Services. There, the natural parents signed an authorization for foster care. Social Services immediately transferred the child to the custody of the respondent, Angel Guardian Home, an authorized agency. Shortly thereafter the child was placed in a foster home. After preliminary visit from the respondent agency’s case worker (Sept. 9, 1971) the natural parents on January 7, 1972 at the Angel Guardian Home each executed a surrender instrument. At that stage, the child had been in a foster home for a period of eight months. The surrender instruments authorized the respondent agency to place the child for adoption and authorized the agency to consent to the adoption without further notice to the natural parents. (Social Services Law, § 384, subd 2.) Adoption proceedings were thereafter commenced by the foster parents with whom the child had been boarded out. After the expiration of the six-month period, an order of adoption was signed in December, 1972 by this court. At this stage the natural parents had had the child for a period of 18 days and the foster parents, who upon the entry of the order became the adoptive parents, had had the child for 20 months.
This proceeding by the natural parents was commenced in *134 February, 1974 (petition later amended) approximately 14 months after the order of adoption had been entered. At that stage the child had been with his adoptive parents for 34 months.
The respondents in the proceeding are the Commissioner of Social Services (Commissioner) and the Angel Guardian Home, the authorized agency (agency) to which the child had been surrendered. The respondents have answered the petition and on the basis of the answer and accompanying affidavits have moved for summary judgment. Summary judgment is sought by the respondents in order to avoid the involvement in the proceeding of the guiltless adoptive parents and the resulting emotional trauma from fear that the child may be wrested from them.
The respondents contend principally that there is no statutory authority for the abrogation of an adoption once an order of adoption has been made. Alternatively they contend that no triable issue of fact exists upon the basis of the pleadings and the documentary and other evidentiary matter underlying the pleadings: in short that the contentions of the natural parents are not genuine but instead frivolous, based solely on a belated attack of conscience.
Each contention is treated in a separate decision.
I.. BEFORE ADOPTION
We discuss briefly the decisions and statutes governing "revocation” of surrenders or consents by natural parents before the order of adoption for whatever light these may shed on the issue of "abrogation” of adoptions after an order has been made by a court.
Adoptions are accomplished either through an "authorized agency” (Social Services Law, § 371, subd 10) referred to as agency adoptions or by "private placement” (Domestic Relations Law, § 109, subd 5) referred to as private adoptions. In agency adoptions, all preliminary procedures up to the petition for adoption are governed by sections 371-392 of the Social Services Law. In private adoptions, all procedures from inception through the order of adoption are governed by article 7 of the Domestic Relations Law.
When the adoption is accomplished through an agency it is accomplished by a "surrender instrument,” a term applicable exclusively to agency adoptions. A surrender instrument exe *135 cuted by the natural parents confers care, custody and guardianship for either the purpose of "placing out”, i.e., without compensation (Social Services Law, § 371, subd 12) or for "boarding out”, i.e., with compensation (Social Services Law, § 371, subd 14) or for the purpose of adoption, as the surrender instrument may provide. (Social Services Law, § 384, subd 2.) When it is executed for the purpose of adoption, it confers, as do the surrender instruments in issue, upon the authorized agency the authority to consent to the adoption without notice to the surrendering parents. When the surrender instrument is for the purpose of adoption and the instrument so provides, the natural parents in an agency adoption do not appear before the court. As authorized by the surrender, only the agency appears and consents to the adoption. Unless the waiting period is waived for good cause, the order of adoption is not signed unless the child has been with the adoptive parents for at least six months.
A private placement adoption is effected by means of a written "consent” of the natúral parents, a term used exclusively in private adoptions. Except where "consent” is not required because the natural parents have "abandoned” the child (Social Services Law, § 371, subd 2; Domestic Relations Law, § 111) the "consent” agreement will usually be executed before the court and the parents will be advised of its consequences. (Domestic Relations Law, § 115, subd 3.) Unless waived for cause, a waiting period of six months after the filing of the petition is required (Domestic Relations Law, § 116, subd 1) before the order of adoption is signed.
No statute specifically authorizes revocation of "surrender instruments” or "consents” before adoption. Section 383 of the Social Services Law does provide however that a natural parent shall not be entitled to custody of a child surrendered for adoption except by an order of the court or with the consent of the Commissioner or agency to whom the child was° surrendered. (People ex rel. Anonymous v Saratoga County Dept. of Public Welfare, 30 AD2d 756.) No statute specifically governs revocation of "consents” to private adoptions. However, during a private placement adoption proceeding, the court, if not satisfied with the proof, may dismiss the petition and return the child to the natural parents or place it with an authorized agency. (Domestic Relations Law, § 116, subd 2; Matter of Hipps, 39 AD2d 898.) Obviously, if the court has such power on its own initiative, it may do so on petition or *136 appearance of the natural parents before or during the adoption proceedings. Courts have frequently entertained proceedings to revoke "surrenders” and "consents” before the order of adoption is signed without differentiation in applicable principles between agency and private adoptions.
In People ex rel. Scarpetta v Spence-Chapin Adoption Serv. (28 NY2d 185, 190-191), the court stated: "In New York, a surrender executed by a mother, in which she voluntarily consents to a change of guardianship and custody to an authorized agency for the purpose of adoption, is expressly sanctioned by law. (Social Services Law, § 384.) The statute nowhere endows a surrender with irrevocability foreclosing a mother from applying to the court to restore custody of the child to her. In fact, the legislation is clear that, until there has been an actual adoption * * * the surrender remains under, and subject to, judicial supervision.”
What was said by the Scarpetta court of "surrenders” in agency adoptions is equally applicable to "consents” in private adoptions. (See, however, Foster, Revocation of Consent to Adoption: A Covenant Running with the Child?, NYU, Aug. 6, 1971, p 1, col 4.)
A. DECISIONS GOVERNING REVOCATION OF SURRENDERS AND CONSENTS
Many decisions consider the revocation of "surrender instruments” and "consents.” Although these decisions articulate other general principles — "the primacy of the status of the natural parent”; "the fitness, competency and ability of the natural parents to maintain, support and educate the child”; "the best interests of the child”; — a key factor in all of the decisions in which revocation has been allowed is the fact that the natural parent had "an early change of mind” soon after the surrender or consent: contra however where there has been long delay or equivocation and indecision on the part of the natural parents. Delay is evidence of a settled purpose to surrender the child: it is as well harmful to the well-being of the child.
Listed are those recent cases in which the courts have permitted revocation of a "surrender instrument” (also time within which the parent had a change of mind). Matter of Spence Chapin Adoption Serv. v Polk, 29 NY2d 196 ["shortly after” surrender, agency requested return]; Scarpetta v Spence-Chapin Adoption Serv. 28 NY2d 185, supra [22 days *137 after surrender]; Matter of Overton, 44 AD2d 900 [two weeks]; People ex rel. Louisa v Faella, 37 AD2d 598 [30 days]; People ex rel. Anonymous v Wise Servs., 21 AD2d 327 ["less than one month”]; Matter of Geiger, 6 AD2d 977 [3 weeks].)
Revocations of "surrender instruments” were denied in the following cases. (People ex rel. Wessel v New York Foundling Hosp., 36 AD2d 936 [time not stated; denied because "mother unfit”]; Matter of Roe v New York Foundling Hosp., 36 AD2d 100 [7 months; denied "best interests of the child”]; People ex rel. Doe v Edwards, 31 AD2d 64, affd 23 NY2d 925 [one year and a half; "sporadic changes of mind”]; People ex rel. Anonymous v New York Foundling Hosp., 17 AD2d 122, affd. 12 NY2d 863 [six months; "with passage of time, the interests of the child would be seriously and increasingly jeopardized”]; People ex rel. Anonymous v Anonymous, 10 NY2d 332 [three years; "abandonment” found]; People ex rel. Claudia "pp" v Sackey, 32 NY2d 742, revg 40 AD2d 130 ["almost immediately”; but parent found "unfit”].)
Listed are recent decisions which permitted revocation of "consents” to private adoptions. (Matter of Anonymous, 41 AD2d 961, affd 33 NY2d 541; [time not stated; parent found fit]; People ex rel. Ferro v Bacile, 35 AD2d 550, affd 28 NY2d 537 ["soon after”]; People ex rel. Kropp v Shepsky, 305 NY 465 [14 days].)
Revocations of "consents” to private adoptions were denied in the following decisions. (Matter of Infant D, 41 AD2d 961 [3 days; mother found "unfit”]; Matter of Maxwell, 4 NY2d 429 [long delay].)
B. RECENT STATUTORY CHANGES GOVERNING REVOCATION OF SURRENDERS AND CONSENTS
In recent years, the Legislature has begun to examine the statutes and as well the decisions of the courts governing the rights of children in the custodial care of authorized agencies. In 1969 (L 1969, ch 640) the definition of an "abandoned child” was amended to permit proceedings to free the child for adoption after six months instead of one year. In 1970 (see Social Services Law, § 392, added L 1970, ch 742; readopted in present form L 1972, ch 940) a procedure for compulsory periodic review by the Family Court of all children in foster care was adopted. That court after hearing could direct that proceedings be instituted to free the child for adoption. In the *138 alternative, the court could either direct the return of the child to the natural parents or continue it in foster care.
Following the 1971 decision of the Court of Appeals in Scarpetta (28 NY2d 185, supra), some significant statutory changes in the laws governing adoptions were made by the 1972 Legislature.
Scarpetta had repeated the social policy frequently and eloquently expressed in earlier cases (People ex rel. Kropp v Shepsky, 305 NY 465, 468, supra; People ex rel. Grament v Free Synagogue Child Adoption Committee, 194 Misc 332, 336, app dsmd 275 App Div 823) that the natural parents have a right to custody and care of a child superior to nonparents. This "primacy of status” the court held is not materially altered or diminished by the mere fact of surrender. To an extent, the Legislature in 1972 has altered the decisional rule of the primacy of the natural parents. After a child has been "surrendered for adoption” or "placed in an adoptive home” in a proceeding to determine custody or to revoke the surrender instrument — "the parent or parents who surrendered such child shall have no right to the custody of such child superior to that of the adoptive parents, notwithstanding that the parent or parents who surrendered the child are fit, competent and able to duly maintain, support and educate the child. The custody of such child shall be awarded solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular custodial disposition.” (Social Services Law, § 383, subd 5, added by L 1972, ch 639, § 1.)
The same chapter (L 1972, ch 639, § 2) amended section 384 of the Social Services Law to add new subdivision 5, a short "bar” (limitation) statute: "If a duly executed and acknowledged adoption surrender shall so recite, no action or proceeding may be maintained by the surrendering parent or guardian for the custody of the surrendered child or to revoke or annul such surrender where the child has been placed in the home of the adoptive parents and more than thirty days have elapsed since the execution of the surrender * * *. This subdivision shall not bar actions or proceedings brought on the ground of fraud, duress or coercion in the execution of a surrender.”
These new provisions do not apply where the child has been "placed out” or "boarded out” solely for the purpose of temporary care. When however the child has been "placed for *139 adoption,” the new statute reverses prior decision law which gave primacy of status to the parents over adoptive nonparents. (People ex rel. Claudia "PP" v Sackey, 32 NY2d 742, supra.) And it should be noted that the provisions reverse decisional law which places the burden of proof on the prospective adoptive nonparents. It is no longer the law as stated in Scarpetta (28 NY2d 185, 193, supra) that: " [e]xcept where a nonparent has obtained legal and permanent custody of a child by adoption * * * he who would take or withhold a child from mother or father must sustain the burden of establishing that the parent is unñt and that the child’s welfare compels awarding its custody to the nonparent. ’ ”
The foregoing quoted statutes apply exclusively to "agency” adoptions. The same session law (L 1972, ch 693, § 3) added to the Domestic Relations Law a new section 115-b applicable to "consents” in private adoptions. Since 1966 (L 1966, ch 792, adding subdivision 4 to section 384 of the Social Services Law) an agency, in an agency adoption, could bar a surrendering parent from attacking a surrender instrument by petitioning for court approval of the surrender instrument. If the surrendering parent appeared and executed the surrender instrument before the Judge or Surrogate or failed to appear after notice, he was barred from challenging the validity of the surrender instrument "in any other proceeding.”
The Legislature by adding new section 115-b to the Domestic Relations Law made similar provision limiting the right of a natural parent to revoke a "consent” in a private adoption. If the "consent” is acknowledged before the court and the court advises the natural parent of the consequences of the consent, the consent becomes irrevocable then and there. (See, however, Matter of Anonymous, 77 Misc 2d 323, on remand NYLJ, Dec. 18, 1974, p 17, col 6.) If the "consent” is not acknowledged before the court and the consenting instrument so advises, the consenting parent has 30 days to revoke the consent. If not revoked, it becomes irrevocable. As in the case of agency surrenders, subdivision 4 of section 115-b provides that nothing contained in the section bars a proceeding by the natural parent to revoke a "consent” to a private adoption "on the ground of fraud, duress or coercion in the execution or inducement of an adoption consent.”
The 1972 statutes reversed the Scarpetta holding in a further respect. That court had held that the prospective adoptive parents could not intervene in a proceeding to revoke *140 a surrender instrument. New legislation provided that prospective adoptive parents may intervene as a matter of right at any time. (Social Services Law, § 384, subd 3 [3d par]; L 1972, ch 792.) Foster parents having custody and care of a child for more than 24 months could also intervene as a matter of right. (Social Services Law, § 383, subd 3 [2d par]; L. 1972, chs 645, 646.)
In summary of these recent statutes, it is obvious that the Legislature has moved in the direction of limiting or barring the rights of natural parents to revoke "surrenders” and "consents.” The Legislature has tended also to disagree with the decisional law on the "primacy of status” of the natural parents. The courts charged with responsibility in the matter on the basis of hard experience tend also to disagree. (Matter of Barbara “P” 71 Misc 2d 965; Matter of Jennifer ”S”, 69 Misc 2d 942; People ex rel. Stone v Maglio, 62 Misc 2d 292; Matter of Vanesa "F", 76 Misc 2d 617.)
II. AFTER ADOPTION
As previously observed, there is no authoritative decision of an appellate court or indeed of a lower court which discusses the right of natural parents to abrogate an order of adoption once made by revocation of a "surrender” or "consent” or otherwise.
Many decisions which determine such rights before adoption infer obliquely that no such right exists after adoption or if it exists it is extremely limited. Typical is the comment of Mr. Justice [later Presiding Justice] Botein in People ex rel. Grament v Free Synagogue Child Adoption Committee (194 Misc 332, 336, supra): "In short, it would appear that the Legislature has decided that every measure must be taken to render a consummated adoption unassailable; also, to protect at all times the repute of the adoptive agency and the evolving status of the prospective foster parents. In this latter regard, however, the Legislature did not shut the agency door forever, prior to adoption, to a 'fit, competent’ parent, 'able to duly maintain, support and educate’ her child, who after the impact of a physical separation suffered a change of heart and desired to recapture custody.”
As Judge [later Chief Judge] Desmond observed in Matter of Eaton (305 NY 162, 165): "On few questions is decisional law so clear as on this: that adoption, and the abrogation thereof, *141 is, in New York, solely the creature of, and regulated by, statute law.” (Citing cases.)
Domestic Relations Law (§§ 118, 118a, 118b and 118c [repealed L 1974, ch 1035, § 1]) did provide for abrogation of adoptions but only inter se, i.e., by either the adoptive parents or the adopted child or by the consent of both. As these statutes and the decisions thereunder establish cause for abrogation must relate to events subsequent to and not prior to the order of adoption (Matter of Eaton, supra; Matter of MacRae, 189 NY 142; Matter of Posinsky, 14 AD2d 846; Matter of Buss, 234 App Div 299; Matter of Anonymous, 185 Misc 962; Matter of Anonymous, 29 Misc 2d 580; Matter of R. W, 74 Misc 2d 623; Matter of Anonymous, 76 Misc 2d 1077).
In 1938 (L 1938, ch 606) there was added to section 114 of the Domestic Relations Law the provision: "In like manner as a court of general jurisdiction exercises such powers, a judge or surrogate of the court in which the order of adoption was made may open, vacate or set aside such order of adoption for fraud, newly discovered evidence or other sufficient cause.”
While no expressed history of the provision is available, it is probable that it was added because of a continuing controversy whether abrogation proceedings must be brought in the Supreme Court which possessed equitable jurisdiction rather than the Surrogate’s Courts whose equitable jurisdiction over adoptions as distinguished from affairs of decedents was then doubtful. (Matter of Ziegler, 161 App Div 589; Stevens v Halstead, 181 App Div 198; cf. NY Const, art, VI, § 12, subd e, eff Sept. 1,1962.)
The decisions under this quoted provision of section 114 are not particularly helpful. (Matter of Bruce [Atkins], 269 App Div 718, affd 295 NY 702; Matter of Martin, 269 App Div 437; Matter of Lord, 28 AD2d 1203; Matter of McDevitt, 176 App Div 418, affd 221 NY 598; Matter of Burde, 7 AD2d 344, affd 6 NY2d 941; Matter of Brundage, 134 NYS2d 703; Matter of Oddo, 186 Misc 359; Matter of Anonymous, 161 Misc 371; Matter of Anonymous, 27 Misc 2d 1031; Matter of Anonymous, 29 Misc 2d 580; Matter of Black, 57 Misc 2d 890.) These cases establish the undoubted jurisdiction of the court to abrogate an adoption when jurisdiction was defective; or when a fraud was perpetrated on the court in the adoption proceedingby the petitioning adoptive parents.
Of greater interest in the present proceeding is People ex rel. McGaffin v Family & Children’s Servs. of Albany (2 Misc *142 2d 608, mod 3 AD2d 633; see, also, 6 Misc 2d 776, affd 7 AD2d 769). In that case, the natural mother instituted habeas corpus against the authorized agency after an order of adoption had been signed. The petitioning natural mother contended that she had been "coerced” by her husband, the natural father to sign the surrender. Special Term (Mr. Justice Bookstein) dismissed the petition without a hearing, stating (2 Misc 2d 608, 609-610):
"Despite the adoption, the petitioner argues that there is no finality to a surrender to an authorized agency, such as respondent and hence the question before this court is what is for the best interest of the child.
"With this contention this court cannot agree. That contention has merit only prior to adoption but not after adoption.* * *
"It follows that prior to an adoption, the doors of an agency, such as respondent, are not shut forever against the natural parents; that a consummated adoption is unassailable (except in those situations in which the Domestic Relations Law provides for abrogation, Domestic Relations Law, §§ 116, 117, 118) and hence the doors of respondent agency are closed forever to petitioner.” (Emphasis in original.)
The Third Department affirmed (3 AD2d 633) holding that the writ should have been dismissed simply because after an order of adoption the child is not any longer in the custody of the respondent agency. It characterized the finding that an order of adoption was "unassailable” as harmless surplusage expressing no opinion on that issue.
The natural mother then brought an action against the authorized agency to revoke the surrender agreement. The defendant agency moved for summary judgment.
The court (Mr. Justice Bookstein) noted that the gravamen of the complaint was "fraud or duress or both” directed at plaintiffs former husband. The only allegation against the defendant agency was that "in effecting the execution of the surrender agreemént, it did so hastily and without careful and thorough investigation and failed to determine whether the plaintiffs surrender agreement was a voluntary act.” (6 Misc 2d 776, 777-778.)
Granting the motion for summary judgment by the defendant agency, the court found this allegation insufficient and citing People ex rel Grament v Free Synagogue Child Adop *143 tion Committee (194 Misc 332, 336, supra) held that a consummated adoption is "unassailable.” (6 Misc 2d 776, 778, supra.)
The Third Department unanimously affirmed (7 AD2d 769, 770): "In the absence of some overreaching, wrongdoing, or knowledge by the defendant no cause for equitable relief is demonstrated by plaintiff * * * The statute carefully prescribes the consent given to adoption and the proceedings to be followed. (Domestic Relations Law, § 111 et seq.) It specifically provides for abrogation of adoption (§§116, 117, 118). The conditions there prescribed are not any of those here alleged. We are of the opinion that the court at Special Term was right in declining to entertain an action for equitable relief under the pleaded facts. The consent was executed in November, 1954 and not until almost two years later did plaintiff seek to disavow her consent on any ground.”
This is as close as any appellate decision approaches the determination of the issue before this court.
This court concludes that under section 114 of the Domestic Relations Law, an order of adoption may be abrogated upon petition of the natural parents only when—
1. Jurisdiction is defective in an essential predicate such as failure to obtain a "surrender” from the natural parents in an agency adoption or the "consent” in a private adoption or failure to give notice to the natural parents when their consent is sought to be dispensed with because of "abandonment.” (Domestic Relations Law, § 111.) When the court has not obtained jurisdiction, the order of adoption may be attacked collaterally as well as directly. Jurisdiction is not defective, however, for mere failure to comply with any procedures which the court would have statutory authority to waive. (Domestic Relations Law, §§ 112, 115.)
2. Fraud or deception has been practiced on the court by the petitioning adoptive parents in a private adoption or by the authorized agency in an agency adoption, to the extent that if the true facts were known to the court, it would have resulted in a dismissal of the petition and a denial of the order of adoption. Natural parents who practiced fraud or deception upon the court would be equitably estopped from seeking abrogation.
In the instant proceeding the natural parents allege that in signing the surrender agreements, they did not understand that they were consenting to the adoption of "Nicky.” There is no allegation of misrepresentation, fraud or coercion by the *144 authorized agency. (The full facts are discussed in a separate decision granting summary judgment on alternative grounds.)
In the absence of overreaching, wrongdoing or knowledge of such by the respondent Commissioner or agency, no legal basis for the abrogation of the order of adoption is stated. Summary judgment is granted.