Leo Dikman, J.
This is a petition brought pursuant to section 385-a of the Social Services Law, wherein petitioner, the Department of Social Services of the City of New York, applies for approval of an instrument of voluntary placement of an infant. The subject child, Roseann Hayes, was born on March 16, 1975, and the instrument of placement executed on or about the 18th of March, 1975.
The natural mother now appears in opposition to the petition, seeking revocation of the placement and the return of the infant to her care and custody. The mother has not had a change of heart as to her settled purpose to give up this child for adoption. She seeks, instead, a return to her custody for the purpose of effecting a private placement adoption with a couple recommended by an attorney who represents many adopting couples.
Although the child is presently in placement with a foster family, the record in this case does not indicate that the present foster couple are prospective adoptive parents. Further, there is no reason to believe that the child will suffer any emotional damage as a result of her removal from the foster home, given the baby’s youth and the relatively short period in which she has lived in placement. The respondent’s (natural mother’s) counsel has trenchantly stated the issue before this court in his memorandum of law: "The real issue, then, is whether the placement of an infant for private adoption, through a lawyer, not through an authorized agency, is one of the 'privileges of parenthood’ under these circumstances, Or, to state the matter from the Court’s point of view, is return of custody to the natural mother in order for her to accomplish her stated aim (i.e. private placement) in the 'best interest of the child?’ More importantly, does the Court have the power to return custody to the natural mother in view of her stated aim?”
At the outset the court will say, with regard to itself, that the court lives in the real world. Drawing upon its experience, the court cannot refrain from expressing its doubts as to the natural mother’s motivation in seeking to place the child privately for adoption. Consider the impression that has been made upon this court. The unwed, impecunious mother, who, *819 having placed her child soon after birth, now desires return of the child, not to exercise a rediscovered maternal instinct, but for the admitted purpose of choosing the adoptive parents herself. She is vigorously represented by private counsel well aware of her lack of means. The prospective, well-qualified adoptive parents have already been contacted and appear to be a family of means. Further, the record reflects that the mother does not know who the parents are, nor in her own words, does she want to know. She is content to let counsel make all of the required arrangements.
This court would be naive, to say the least, were it not to suspect that the prospect of substantial material advantage to both the mother and her counsel played an enormous part in instigating the mother’s instant application. That the spirit, if not the letter of the law (i.e., Social Services Law, § 374, subd 6) is likely being violated is not idle speculation in this case. (See Charles F. Kiley, State Hits "Gray Market” in Adoptions, NYLJ, Feb. 7, 1975, p 1, col 3.)
However, the court will not penalize the child for the suspicious acts of her natural mother and the mother’s counsel. If the relief requested by the mother herein would be in the best interests of the child, then this court would grant the mother’s application. The record before this court indicates that the prospective adoptive couple herein is exceptionally qualified.
There is no question that this court has the power to set aside the natural mother’s surrender, and, by analogy, a temporary placement, and return the child to her custody where the best interests of the child are in accord with such action. "No statute specifically authorizes revocation of 'surrender instruments’ or 'consents’ before adoption. Section 383 of the Social Services Law does provide however that a natural parent shall not be entitled to custody of a child surrendered for adoption except by an order of the court or with the consent of the Commissioner or agency to whom the child was surrendered [citation omitted]. No statute specifically governs revocation of consents to private adoptions. However, during a private placement adoption proceeding, the court, if not satisfied with the proof, may dismiss the petition and return the child to the natural parents or place it with an authorized agency. [Citations omitted.] Obviously, if the court has such power on its own initiative, it may do so on petition or appearance of the natural parents before or during the adop *820 tion proceedings. Courts have frequently entertained proceedings to revoke 'surrenders’ and 'consents’ before the order of adoption is signed without differentiation in applicable principles between agency and private adoptions.” (Matter of Natural Parents v Dumpson, 81 Misc 2d 132, 135.)
"The consent by a parent to the change of guardianship and custody to an authorized agency for the purpose of adoption or care is expressly sanctioned by law [citation omitted] and is a valid contract by which the agency undertakes to become responsible for the care and maintenance of the child unless the child is thereafter adopted. [Citation omitted.] But until there has been an actual adoption, it is a contract the continuance of which remains under judicial supervision; and it is clear that the [court] * * * retains power to direct a change of custody from the authorized agency back to the parent notwithstanding the formal document of surrender. [Citation omitted.]” (Matter of Geiger, 6 AD2d 977, 978.) (See, also, People ex rel. Scarpetta v Spence-Chapin Adoption Serv., 28 NY2d 185, 190-191 [the much publicized "Baby Lenore” case].)
The court being satisfied that the best interests of the child will be promoted by the relief requested herein, the mother’s application is granted on the following condition. The Bureau of Child Welfare of the Department of Social Services will conduct a continuing investigation of the child’s placement subsequent to this disposition and the natural mother and her attorney and the prospective adoptive parents are directed to co-operate. If, within six months from the date herein, the bureau has reason to believe that the best interests of the child are not being served by the disposition herein, this court will entertain an application by the commissioner, by order to show cause, to have the disposition herein vacated. The child is released to the mother forthwith.