In the Matter of the Adoption by ANONYMOUS OF ANONYMOUS.

Second Department, January 17, 1977

*Bartholomew J. O'Rourke* for the natural parents, appellants.

*Louis George Rudd* for the adoptive parents, respondents.

MARTUSCELLO, J. The appellants, the parents of the child whose future home is at stake here, seek to revoke their nonjudicial consent to a private placement adoption.

The infant was born on September 2, 1975. At her own request, the mother, who has two other children, aged 10 and 13, was not put in the maternity ward of the hospital and was never informed of the child's sex. On September 5, 1975, without ever having been seen by his parents, the infant was delivered directly from the hospital into the care of his adoptive parents.

On September 16, 1975 the parents went to the office of

Louis George Rudd, the attorney who was handling the proceeding for the adoptive parents, and signed an irrevocable consent form. That consent form, and the other documents relative to the adoption proceeding, were received by the Adoption Bureau of the Family Court on October 7, 1975 and they were approved and filed on November 14, 1975. A date in January, 1976 was set for a final hearing.

On December 12, 1975 the parents received a letter notifying them of the date of the adoption hearing. Thereupon, acting upon the advice of a psychiatrist, they decided to try to secure the baby's return and contacted their present attorney. He called Mr. Rudd some time in December, 1975 and notified him of the parents' change of mind. In February, 1976 the parents filed a notice of revocation.

Section 115-b of the Domestic Relations Law contains special provisions relating to the finality of consents in private placement adoptions. In enacting those provisions, the Legislature moved in the direction of limiting or barring the right of the natural parents to revoke "surrenders" or "consents" (see *Matter of Natural Parents of "Nicky" v Dumpson,* 81 Misc 2d 132, 139, affd 2d Dept, Nov. 24, 1975). It did so by providing two separate and distinct ways of consenting to private placement adoptions, as follows:

(1) Section 115-b (subd 1, par [c]) of the Domestic Relations Law provides that if a consent to an adoption is executed or acknowledged before a Judge or Surrogate of the court in which the adoption proceeding is to be commenced, and such consent states that it shall become irrevocable upon such execution or acknowledgment, it becomes irrevocable in accordance with its terms. At the time of execution, the consenting parent is to be informed, in detail, of the consequences of such act by the Judge or Surrogate (Domestic Relations Law, § 115-b, subd 2).

(2) Section 115-b (subd 1, par [d], cl [i]) provides for a nonjudicial consent to an adoption. Such a consent becomes irrevocable 30 days after the commencement of the adoption proceeding, if the consent so states, "unless written notice of revocation thereof shall have been received by the court within said thirty days." The 30-day period of revocability starts running at the time of the filing of the petition for adoption (see Domestic Relations Law, § 115-b, subd 3, par [b]). Even if written notice of revocation is received during that 30-day period, it may be given effect only if it is unopposed by

the adoptive parents or, if it is opposed, if it is in the best interests of the child to give effect to the notice (Domestic Relations Law, § 115-b, subd 1, par [d], cl [ii]).

Thus, the statute contains separate safeguards in the form of (1) a judicial explanation of the gravity of the step, and (2) a 30-day period of revocability after the commencement of the adoption proceeding.

The consent signed by the parents herein conformed to all of the statutory requirements for a nonjudicial consent. It was given after much soul searching and after discussions with a psychiatrist during the pregnancy. Nevertheless, the parents assert that they are entitled to revoke their consent to the adoption because they were deprived of notice that the adoption proceeding had been commenced.

Except for the requirement that the consent spell out the fact that it becomes irrevocable 30 days after the commencement of the adoption proceeding (Domestic Relations Law, § 115-b, subd 1, par [d]), there is no further provision for notice to the parents of the date that the petition is filed.

While I agree with the proposition that the "right of the natural parents to the care and custody of their child" is "basic" (Skinner v Oklahoma, 316 US 535, 541), I cannot agree with Mr. Justice Suozzi's view that appellants have been deprived of such right without adequate notice. I find his position, that he "would have joined with the majority opinion herein had the statute provided that the natural parents' revocation had to be received by the court within 30 days from the date of execution and acknowledgment of the consent", somewhat anomalous. The appellants knew that they had at least that initial 30-day period within which to revoke their consent.

Under the facts of this case we need not reach the question of the constitutionality of this statute since, even after the appellants received notice of the hearing on December 12, 1975, they did not formally move to revoke their consent until February 3, 1976, more than 50 days after the receipt of such notice. Under these circumstances, I cannot but find that the attempted revocation was ineffective. The order should be affirmed in its entirety.

Suozzi, J. (dissenting). I dissent and vote to (1) reverse the order appealed from and (2) remand the matter to the Family Court for a hearing as to whether the best interests of the

child will be promoted by the return of the child to his parents, or by the adoption of the child by the adoptive parents.

Prior to the enactment of section 115-b of the Domestic Relations Law in 1972, it was the law in this State that, before the entry of an order of adoption, there could be no estoppel or waiver which could make irrevocable the consent of a mother to the adoption of a child who had not been abandoned, if the mother was not unfit and did not seek to revoke her consent for an improper motive. That principle of law served both the Bar and the public for many years as a humane and flexible method of dealing with the complex human problems which necessarily arise in these cases. The burden of proof on each of those points rested on the nonparent in a proceeding where the natural parent sought custody *(People ex rel. Scarpetta v Spence-Chapin Adoption Serv.,* 28 NY2d 185; *People ex rel. Kropp v Shepsky,* 305 NY 465; *People ex rel. Anonymous v Anonymous,* 19 Misc 2d 441; *Dick v Scarfia,* 7 AD2d 618).

Nevertheless, in 1972 the State Legislature enacted section 115-b of the Domestic Relations Law as part of a package of amendments to the Domestic Relations and Social Services Laws (see Social Services Law, § 383, subd 5; § 384, subd 5). By the enactment of these statutes, the Legislature (1) "moved in the direction of limiting or barring the rights of natural parents" to revoke their consents to private placement adoptions or surrenders to authorized agencies (see *Matter of Natural Parents of "Nicky" v Dumpson,* 81 Misc 2d 132, 140, affd 2d Dept, Nov. 24, 1975) and (2) limited the decisional law on the "primacy of status" of natural parents, as set forth in such cases as *People ex rel. Scarpetta v Spence-Chapin Adoption Serv.* (28 NY2d 185, 193, *supra).*

In their memorandum in support of this legislation, the sponsors thereof stated, in pertinent part, that the legislation was "intended to provide a legal framework within which future adoptions can be undertaken * * * with humane regard for the rights of the child, the natural mother and the adoptive parents." (NY Legis Ann, 1972, p 202.)

While I have personal reservations regarding the wisdom of section 115-b of the Domestic Relations Law insofar as it prescribes a fixed period of time within which the natural parents have the opportunity to revoke their consent to an adoption, I am cognizant of the fact that it was within the

Legislature's power to enact such a statute. Accordingly, I would have joined with the majority opinion herein had the statute provided that the natural parents' revocation had to be received by the court within 30 days from the date of execution and acknowledgment of the consent. Such a statutory scheme would allow natural parents to easily calculate the 30-day period within which they could change their minds regarding the adoption. Instead, the statute provides, as the sponsors have emphasized in their memorandum in support of the legislation, that "the running of the 30-day period will start only with the institution of the adoption proceeding".

It is my view that section 115-b (subd 1, par [d], cl [i]) of the Domestic Relations Law, which states that "[s]uch consent shall, if it shall so state, become irrevocable thirty days after the commencement of the adoption proceeding unless written notice of revocation thereof shall have been received by the court within said thirty days", constitutes a deprivation of the natural parents' right to due process of law by failing to provide them with adequate notice as to when the adoption proceeding is commenced.

There is absolutely no provision in the statute affording the natural parents notice as to when the adoption proceeding has been commenced by the adoptive parents so as to commence the running of the 30-day period within which they may revoke their consent. The respondents herein, who are the prospective adoptive parents, argue that the consent form, pursuant to statute, sets forth the name and address of the court in which the adoption proceeding is to be commenced (Domestic Relations Law, § 115-b, subd 1, par [a]) and that "[o]rdinary inquiry and diligence would have provided them [the parents] with the date the proceeding commenced." I disagree.

The burden of ascertaining the date on which the adoption proceeding was commenced should not be thrust upon the natural parents. Insofar as the statute herein clearly affects the right of the natural parents to the care and custody of their child, a right deemed "essential", "basic" and "precious" (see *Meyer v Nebraska,* 262 US 390, 399; *Skinner v Oklahoma,* 316 US 535, 541; *May v Anderson,* 345 US 528, 533), it is incumbent upon the State to provide adequate notice to the natural parents before a child is irrevocably taken away from them (see *Armstrong v Manzo,* 380 US 545; see, also, *Stanley v Illinois,* 405 US 645). Interestingly enough, it must be noted

that the statute herein gives the prospective adoptive parents greater rights in this regard than those afforded to the natural parents. In particular, section 115-b (subd 3, par [b]) provides that when the "court has received or shall receive such notice of revocation, the court shall promptly notify the adoptive parents, by notice in writing to them and to their attorney, of the receipt by the court of such notice of revocation." The adoptive parents can then challenge the proposed revocation. Such a disparity in treatment between the natural parents on the one hand, and the adoptive parents on the other, cannot be condoned.

The constitutional infirmity of section 115-b (subd 1, par [d], cl [i]) is readily apparent from the facts at bar. The record indicates that the natural parents had no notice that the adoption proceeding had been commenced until they received a letter, dated December 12, 1975, from respondents' attorney advising them of a court hearing which was to be held in this matter on January 14, 1976. (The scheduled hearing was not held on that date, but was adjourned to a later date.) However, the adoption proceeding had been commenced more than 30 days prior to their receipt of said letter. By virtue of the statute's provisions, the appellants had already lost their right to revoke their consent when they first were notified, gratuitously as it were, by the respondents' counsel, that the adoption proceeding had been commenced.

Assuming, *arguendo,* that the letter from the respondents' attorney dated December 12, 1975 constituted an informal notice to the appellants that the adoption proceeding had been commenced, and conceding that appellants did not formally move to revoke their consent until February, 1976, nevertheless, the record clearly indicates that, immediately upon receipt of the letter dated December 12, 1975, appellants' attorney orally advised the respondents' attorney that his clients, the natural parents, were having serious doubts about their consent to the adoption and wished to revoke it. The appellants' attorney also advised the respondents' attorney that he was going away for the holidays and the latter promised not to discuss the matter with his clients, the prospective adoptive parents, until the attorney's return. In accepting the letter of the respondents' attorney as a valid notice of the commencement of the adoption proceeding, on the one hand, thereby circumventing the apparent constitutional infirmity of the statute, and, on the other hand, rejecting the appellants'

attorney's timely oral notification to the respondents' attorney that the natural parents wished to revoke their consent, the majority herein has created an unconscionable double standard which has seriously prejudiced the appellants' rights.

The decision of the Supreme Court of the United States in *Armstrong v Manzo* (380 US 545, *supra)* is indicative of the close scrutiny that the courts are obligated to give to statutes affecting parents' rights to the care and custody of their children. In that case, a married couple was divorced in Texas and custody was granted to the mother. The husband was to pay a monthly sum for the child's support. The mother remarried and her new husband sought to adopt the child. The applicable State law required the father's written consent to the adoption, unless he had not substantially contributed to the child's support for two years commensurate with his financial ability. In the latter situation, the written consent of a Juvenile Court Judge could be accepted. The mother filed an affidavit in the Juvenile Court alleging that the father had failed to contribute to the child's support for more than two years and the Judge consented to the adoption. On that same day she filed an adoption petition alleging that the father's consent was not necessary because of his failure to support the child for more than two years and that the Juvenile Court Judge had given his written consent. No notice of the filing of the affidavit or of the adoption petition was given to the father, although his whereabouts were known. An adoption decree was entered thereafter. Upon being so advised, the father moved to have the decree set aside. He was afforded a hearing, at which time he introduced evidence that he had not failed to contribute to his child's support. The court denied the motion. The father argued, on appeal, that he had been deprived of due process of law because of the entry of the adoption decree without notice. The Supreme Court held that the failure to give the father notice of the pending adoption proceeding deprived him of his rights without due process of law and that the hearing which was subsequently granted to him did not remove the constitutional infirmity since he was forced to assume burdens of proof which, had he been given notice of the adoption proceeding, would have rested on the mother and her new husband.

In my view, the infirmity in section 115-b (subd 1, par [d], cl [i]) is no less serious than that found by the Supreme Court in *Armstrong v Manzo* (380 US 545, *supra)*. Nor is the infirmity

removed by virtue of subdivision 3 of section 115 of the Domestic Relations Law, which provides: "The adoptive parents or parent, the adoptive child and all persons whose consent is required by section one hundred eleven of this article must appear for examination before the judge or surrogate of the court where the adoption proceedings are instituted."

The natural parents are persons whose consent is required for an adoption under section 111 of the Domestic Relations Law. However, their appearance before the court pursuant to subdivision 3 of section 115 cannot remove the constitutional infirmity in section 115-b (subd 1, par [d], cl [i]). First, the adoption hearing under subdivision 3 of section 115 of the Domestic Relations Law invariably occurs long after the 30-day period provided for in section 115-b (subd 1, par [d], cl [i]). Second, it is clear that, under the subject statutory scheme, the adoption hearing provided for in subdivision 3 of section 115 grants the natural parents a final opportunity before the signing of the order of adoption to prove fraud, duress or coercion in the execution or inducement of an adoption consent (Domestic Relations Law, § 115-b, subd 4). However, the burden is on the natural parents to prove the fraud or duress. The 30-day period provided for in section 115-b (subd 1, par [d], cl [i]) of the Domestic Relations Law, however, grants the natural parents the right to revoke, without specifying any particular ground and without assuming any burden of proof.

Finally, since the statute provides that a proper and timely revocation merely triggers a hearing to determine the best interests of the child, rather than an immediate transfer of the child to the natural parents (Domestic Relations Law, § 115-b, subd 3, par [d], cls [i], [ii]), this proceeding should be remanded to the Family Court for the holding of such a hearing.

HOPKINS, Acting P. J., and DAMIANI, J., concur with MARTUSCELLO, J; SUOZZI, J., dissents and votes to reverse the order and remand the matter to the Family Court for a hearing as to the best interests of the child, with an opinion.

Order of the Family Court, Suffolk County, dated July 23, 1976, affirmed, without costs or disbursements.

Permission for the taking of this appeal is hereby granted.